## No. 25600

### The People of the State of Colorado v. James L. Marsh
(516 P.2d 431)

Decided December 3, 1973.

John P. Moore, Attorney General, John E. Bush, Deputy, Sara Duncan, Assistant, Tennyson W. Grebenar, Assistant, for plaintiff-appellee.

Gerash, Gerash & Davis, Frank Dubofsky, for defendant-appellant.

*En Banc.*

MR. JUSTICE HODGES delivered the opinion of the Court.

Defendant Marsh plead guilty to the felony charge of theft of over $100, after withdrawing a previous plea of not guilty. Thereupon, the district attorney moved to dismiss two other felony charges against the defendant, and they were dismissed by the court. During these proceedings, the defendant was represented by two attorneys.

Before accepting the guilty plea, the trial court queried the defendant at great length. The trial court's questions, as shown from the record, dealt fully with the requirements of Crim. P. 11 and the defendant's affirmative answers to the court's questions reveals a clear understanding on his part of the full import and the consequences of his guilty plea.

After the entry of the guilty plea, the defendant applied for probation. In due time, an investigative report was submitted to the trial court by the probation department. After a hearing, the defendant's application for probation was denied and he was sentenced to a term in the penitentiary.

Pursuant to Crim. P. 35(b), defendant filed a motion in the trial court alleging that his guilty plea was not entered in compliance with Crim. P. 11 and the constitutional standards spelled out in *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). For these reasons, the defendant requested that the trial court vacate his plea of guilty. The defendant's specific contentions are set forth and discussed hereinafter. We find these contentions are without merit and therefore we affirm the trial court's judgment which denied the defendant's 35(b) motion.

I.

■■ The defendant maintains that his guilty plea was not

properly entered because prior to its entry the trial court had not specifically informed him that by pleading guilty, he was waiving his right to confront his accusers and his right to remain silent during the trial.

Crim. P. 11 sets forth the required guidelines for the entry of a plea upon arraignment. But nowhere within its provisions does Crim. P. 11, in connection with the entry of a plea of guilty, require the trial court to inform the defendant of these particular rights before a guilty plea is accepted.

In *People v. Randolph,* 175 Colo. 454, 488 P.2d 203 (1971), we quoted with approval the ABA Standards relating to guilty pleas. The proceedings surrounding the taking of the plea of guilty in this case conformed with these ABA provisions. *See* Erickson, *The Finality of a Plea of Guilty,* 48 *Notre Dame Lawyer,* 835 (1973). We hold that this guilty plea satisfied the requirements of Crim. P. 11.

The defendant alternatively argues that the United States Constitution requires that before a guilty plea is accepted, the defendant must be advised that he will be waiving his right to confront his accusers and his right to remain silent during the trial. In other words, it is the defendant's position that the United States Constitution requires more than is mandated by our Crim. P. 11. For this proposition, the defendant relies upon the following language of *Boykin v. Alabama, supra.*

"Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial. First, is the privilege against compulsory self-incrimination guaranteed by the Fifth Amendment and applicable to the States by reason of the Fourteenth . . . . Second, is the right to trial by jury . . . . Third, is the right to confront one's accusers . . . . We cannot presume a waiver of these three important federal rights from a silent record."

Based upon the foregoing quotation from *Boykin,* it is the defendant's argument that any guilty plea which is entered without a specific waiver of a right to confront one's accusers and a right against self-incrimination, automatically violates the Constitution of the United States. As stated previously,

by complying with Crim. P. 11, the trial court fully informed the defendant of his right to trial by jury and that by pleading guilty, he was waiving that right.

So far as we are advised, it appears that we are the fifth state to attempt to determine the exact meaning of *Boykin* in this regard. Two states have interpreted *Boykin* to require a specific waiver of two of the rights not specifically set forth in our Crim. P. 11 before a guilty plea may be accepted. *See People v. Kirkpatrick,* 102 Cal. Rptr. 744, 7 Cal. 3d 480, 498 P.2d 992 (1972) and *People v. Jaworski,* 387 Mich. 21, 194 N.W.2d 868 (1972). Two other states have arrived at an opposite interpretation. *See State v. Laurino,* 106 Ariz. 586, 480 P.2d 342 (1971) and *Tipton v. State,* Okla. Cr., 498 P.2d 429 (1972). We are convinced that the foregoing Arizona and Oklahoma cases present the proper and more logical interpretation of *Boykin,* which interpretation we adopt here and briefly discuss in the following paragraphs.

The language of *Boykin* does not expressly require that the right against compulsory self-incrimination and the right to confront one's accusers at trial must be specifically waived by a defendant before a trial court may accept his guilty plea.

*Boykin* established the principle that before a guilty plea may be accepted, the record must show that it was a voluntary and knowledgeable act and that such cannot be presumed from a silent record. Here, the record is not silent but is, in fact, rather copious in setting forth the many questions asked by the trial court and the answers of the defendant prior to the court's acceptance of his guilty plea. All the requirements of Crim. P. 11 were complied with including the fact that the court made it clear to the defendant that by pleading guilty he was waiving his right to a trial by jury and therefore, he was inferentially waiving his right against compulsory self-incrimination and his right to confront his accusers.

It is our view that the Supreme Court of the United States did not intend in *Boykin* to inflict any straight jacket formalism upon the process of receiving guilty pleas in state prosecutions. Such formalism or ritual would be required if

the defendant's arguments were to be accepted. This court has heretofore declared that adherence to a formal ritual is not required by Crim. P. 11. *People v. Alvarez,* 181 Colo. 213, 508 P.2d 1267 (1973); *People v. Randolph, supra;* and *Ward v. People,* 172 Colo. 244, 472 P.2d 673 (1970). Rather than any ritualistic formalism, our Crim. P. 11 and the Constitution require only that a defendant be aware of the elements of the offense and that he voluntarily and understandingly acknowledge his guilt after being made aware of his various rights as outlined in Crim. P. 11.

Two very recent cases announced by this court deal with the subject of a guilty plea by a defendant and are of significance in our resolution of the issue in this case. *See People v. McClellan,* 183 Colo. 176, 515 P.2d 1127 and *People v. Duran,* 183 Colo. 180, 515 P.2d 1117.

## II.

The defendant also alleges that he was not adequately advised of the nature and elements of the offense charged before he entered his plea of guilty and also, that he was subjected to undue influence by one of his attorneys in connection with his entry of a plea of guilty.

We have examined the record in detail with respect to the above contentions and find that they are totally without merit.

The trial court discussed at length with this defendant the elements of the offense charged and the defendant acknowledged that he was aware of the nature and elements of the felony charge of theft with which he was charged. This record reveals substantial evidence to support the finding of the trial court in the 35(b) hearing that the defendant prior to pleading guilty fully understood the nature and all the elements of the crime with which he was charged. *See People v. Canino,* 181 Colo. 207, 508 P.2d 1273 (1973).

At the 35(b) hearing, defendant testified that at the time of his entry of a plea of guilty, he was acting under the guarantee of one of his attorneys that he would receive probation as the result of his pleading guilty. The record, however, shows that the defendant in response to a question

by the trial court before his entry of a guilty plea stated that no one had promised probation or other disposition if he entered a plea of guilty. In its findings after the 35(b) hearing, the trial court found that there was no undue influence exerted upon this defendant at the time he plead guilty. It is obvious that the trial court disbelieved the defendant's testimony and in its findings attributed greater weight to the record which displayed the defendant's response as above indicated.

Judgment affirmed.