John Wesley LACY, Petitioner,

v.

The PEOPLE of the State of
Colorado, Respondent.

No. 87SC262.

Supreme Court of Colorado,
En Banc.

April 24, 1989.

As Modified on Denial of Rehearing
June 5, 1989.

David F. Vela, State Public Defender, Judy Fried, Deputy State Public Defender, Denver, for petitioner.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Peter J. Stapp, Robert M. Russel, Asst. Attys. Gen., Denver, for respondent.

LOHR, Justice.

We granted certiorari to review an unpublished decision of the Colorado Court of Appeals affirming the conviction of defendant-petitioner John Wesley Lacy, Jr., on three habitual criminal counts. The court of appeals upheld the trial court's denial of the defendant's motion to dismiss the habitual criminal counts at issue in this petition. The defendant asserts on certiorari that his guilty pleas to the charges underlying the habitual criminal counts were constitution-

ally infirm. We conclude that two of these convictions were based on constitutionally infirm pleas of guilty and could not be used as predicates for habitual criminality charges. Since at least two habitual criminal counts must be proved before a defendant can be adjudged a habitual criminal and therefore subject to mandatory increased sentencing, *see* § 16–13–101, 8A C.R.S. (1986), we need not address the validity of the defendant's plea underlying the single remaining habitual criminal count. We therefore reverse the judgment and remand the case for resentencing.

## I.

The defendant was initially charged in a two-count information alleging attempted second degree kidnapping,[1] which is a class five felony, and assault in the third degree,[2] which is a class one misdemeanor. These charges arose out of an attempted abduction that occurred in the early morning on February 9, 1985, outside of the Elks Club in Arvada, Colorado. The victim testified at trial that after leaving her job at the Elks Club and waiting in the parking lot for her car to warm up, Lacy approached her and pushed her into the car. During the subsequent struggle Lacy covered the victim's mouth to keep her from screaming and punched her in the face. While Lacy was attempting to get the car into gear, the victim managed to escape from the vehicle and run away.

On March 25, 1985, the information was amended to add four habitual criminal counts, § 16–13–101(2), 8A C.R.S. (1986), alleging prior felony convictions in 1967, 1973, 1976, and 1980.[3] Lacy moved to dismiss the habitual criminal counts, contending that the guilty pleas supplying the bas-

es for the convictions underlying the habitual criminal counts were accepted in violation of his constitutional rights and state law prescribing procedures for accepting guilty pleas. The trial court received into evidence certified records of each of the earlier proceedings, including transcripts of the providency hearings at which the pleas were entered. The trial court took no testimony with respect to any of the prior guilty pleas, although it did hear extensive arguments directed toward the question of their validity. On June 24, 1985, the trial court dismissed the habitual criminal count relating to the 1967 conviction and denied the defendant's motion as to the remaining counts. Specifically, the court concluded that the guilty pleas underlying the remaining counts met "the standards set forth by the Supreme Court of the United States, the statutes, decisions and rules in the [states in which the pleas were taken] and by the statutes, decisions and rules in the state of Colorado."

Trial to a jury began on July 23, 1985. The jury found the defendant guilty of attempted kidnapping and third degree assault, and also found that the defendant had been convicted of a felony on each of three prior occasions as charged in the three remaining habitual criminal counts. The trial court sentenced Lacy to the Department of Corrections for a term of life imprisonment. At the sentencing hearing, the trial judge imposed an alternative sentence of four years to take effect in the event the habitual criminal adjudication were to be overturned on appeal.

Lacy appealed to the Colorado Court of Appeals, challenging the constitutional validity of each of the three convictions that formed the basis of his adjudication as a

---

1. § 18–3–302, 8B C.R.S. (1986 & 1988 Supp.) (second degree kidnapping); § 18–2–101, 8B C.R.S. (1986) (criminal attempt).

2. § 18–3–204, 8B C.R.S. (1986).

3. §§ 16–13–101 to –103, 8A C.R.S. (1986 & 1988 Supp.), provide for mandatory increased sentencing in cases involving persons adjudicated as habitual criminals. Under § 16–13–101(2), a person convicted in Colorado of any felony who has been three times previously convicted upon

separate felony charges shall be adjudged a habitual criminal and punished by imprisonment in a correctional facility for a life term. Under § 16–13–101(1), a person convicted in Colorado of certain felonies who within ten years of the commission of the instant offense has been twice previously convicted on separate felony charges shall be adjudged a habitual criminal and punished by confinement in a correctional facility for a term ranging from twenty-five to fifty years.

habitual criminal. In an unpublished opinion, the court of appeals rejected his challenges to the guilty pleas underlying the habitual criminal counts and therefore affirmed the judgment of conviction. The court held that the record supported a finding that each of Lacy's guilty pleas was entered knowingly, intelligently, and voluntarily.

Lacy then sought certiorari review in this court. He specifically assigns as error the trial court's refusal to dismiss the habitual criminal counts relating to the felony convictions obtained in 1973, 1976, and 1980. He asserts that these convictions were based on constitutionally defective guilty pleas and therefore were obtained in violation of due process of law. U.S. Const. amend. XIV; Colo. Const. art. II, sec. 25. As to the convictions obtained in 1976 and 1980, we agree. We find it unnecessary to address the validity of the conviction obtained in 1973.

## II.

### A.

■■■ A prior conviction obtained in a constitutionally invalid manner cannot be used against an accused in a subsequent criminal proceeding to support guilt or to increase punishment. *E.g., Loper v. Beto,* 405 U.S. 473, 481, 92 S.Ct. 1014, 1018, 31 L.Ed.2d 374 (1972); *Burgett v. Texas,* 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967); *Watkins v. People,* 655 P.2d 834, 837 (Colo.1982); *People v. Quintana,* 634 P.2d 413, 416 (Colo.1981). We therefore must determine whether Lacy's prior convictions comply with constitutional standards. *See People v. Meyers,* 617 P.2d 808, 814–15 (Colo.1980).[4]

■■■ Due process of law requires that in order to provide the basis for a judgment of conviction, a guilty plea must be made voluntarily. *Henderson v. Morgan,* 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976); *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); *People v. Chavez,* 730 P.2d 321 (Colo.1986); *Wilson v. People,* 708 P.2d 792 (Colo.1985); *Harshfield v. People,* 697 P.2d 391 (Colo. 1985); *People v. Leonard,* 673 P.2d 37 (Colo.1983); U.S. Const. amend. XIV; Colo. Const. art. II, sec. 25. A guilty plea may be involuntary in the constitutional sense for one of two reasons. First, a plea may be involuntary because the defendant does not understand the nature of the constitutional protections he is waiving. *Henderson,* 426 U.S. at 645 n. 13, 96 S.Ct. at 2257 n. 13; *Johnson v. Zerbst,* 304 U.S. 458, 464–65, 58 S.Ct. 1019, 1023–24, 82 L.Ed. 1461 (1938). Alternatively, a plea may be involuntary because the defendant "has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt." *Henderson,* 426 U.S. at 645 n. 13, 96 S.Ct. at 2257 n. 13. In the latter case, a plea is not voluntary unless the defendant received " 'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.' " *Henderson,* 426 U.S. at 645, 96 S.Ct. at 2257 (quoting *Smith v. O'Grady,* 312 U.S. 329, 334, 61 S.Ct. 572, 574, 85 L.Ed. 859 (1941)).

■■■ To establish that the constitutional requirement of voluntariness has been satisfied, the record as a whole must affirmatively demonstrate that the defendant understood the constitutional rights he was waiving and the critical elements of the crime to which the plea was tendered. *People v. Wade,* 708 P.2d 1366, 1368–69 (Colo.1985); *Harshfield,* 697 P.2d at 393; *People v. Keenan,* 185 Colo. 317, 319, 524 P.2d 604, 605 (1974). A reviewing court cannot presume from the mere fact that a

---

4. In reviewing the validity of the guilty pleas underlying Lacy's prior convictions, we need not reach the question of their validity under the statutory and case law in the states in which the pleas were taken. This is so because the relevant inquiry for due process purposes is whether a conviction used to support guilt or increase punishment is constitutionally infirm.

Compliance with state law is not necessarily equivalent to the satisfaction of constitutional requirements. *See People v. Meyers,* 617 P.2d 808 (Colo.1980) (evaluating validity of out-of-state guilty plea by constitutional standards); *People v. Wieghard,* 709 P.2d 81 (Colo.App.1985) (same).

guilty plea was entered that the defendant waived his constitutional rights and understood the critical elements of the crime with which he was charged. *Boykin,* 395 U.S. at 242–43, 89 S.Ct. at 1711–12; *Wade,* 708 P.2d at 1368–69.

1.

■ As to the requirement that the defendant understand the nature of the constitutional protections he is waiving, we have previously held that the trial court need not follow a formalistic litany when accepting a guilty plea. *E.g., Wade,* 708 P.2d at 1368. Rather, the record as a whole must simply show that the defendant entered his guilty plea voluntarily and understandingly. *Wade,* 708 P.2d at 1368–69; *Keenan,* 185 Colo. at 319, 524 P.2d at 605; *People v. Marsh,* 183 Colo. 258, 263, 516 P.2d 431, 433 (1973). Moreover, due process does not require a specific waiver of even the three constitutional rights highlighted in *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709.[5] *Wade,* 708 P.2d at 1369; *Marsh,* 183 Colo. at 262–63, 516 P.2d at 433; *see generally* J. Bond, *Plea Bargaining and Guilty Pleas* § 3.8(b) (2d ed. 1983) (a majority of courts have refused to vacate pleas simply because the record does not affirmatively show a specific waiver of the three constitutional rights referred to in *Boykin* ). Thus, we have rejected an assertion that "when the record of providency proceedings contains no evidence of any reference to the prosecution's burden of proof in criminal trials, any guilty plea accepted during such proceedings must be deemed constitutionally invalid." *Wade,* 708 P.2d at 1370.

■ Nor does due process generally require that the record demonstrate an adequate factual basis for the plea. *See McCarthy v. United States,* 394 U.S. 459, 465, 89 S.Ct. 1166, 1170, 22 L.Ed.2d 418 (1969) (procedure embodied in Rule 11 of the Federal Rules of Criminal Procedure, which directs court to determine that factual basis exists for guilty plea, has not been held to be constitutionally mandated); *Smith v. McCotter,* 786 F.2d 697, 702–03 (5th Cir.1986); *Rodriguez v. Ricketts,* 777 F.2d 527, 528 (9th Cir.1985); *Willbright v. Smith,* 745 F.2d 779, 780 (2d Cir.1984); *Paulsen v. Manson,* 203 Conn. 484, 525 A.2d 1315, 1318 (1987); *see also* 2 W. La-Fave & J. Israel, *Criminal Procedure* § 20.4(f) (1984 & 1989 Supp.).[6] The situation may be otherwise where a plea is entered under circumstances where the defendant insists that he is innocent. *See North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).[7]

2.

■ As to the requirement that the defendant understand the nature of the charges against him, the record must affirmatively demonstrate the defendant's understanding of the critical elements of the crime to which the plea is tendered. *E.g., Harshfield,* 697 P.2d at 393; *Leonard,* 673 P.2d at 39; *Watkins,* 655 P.2d at 837; *see also* ABA Standards for Criminal Justice, Standard 14–1.4 (2d ed. 1980). In order to satisfy the requirement, the court should explain the critical elements " 'in terms which are understandable to the defendant.' " *Watkins,* 655 P.2d at 837 (quoting *People v. Cumby,* 178 Colo. 31, 33, 495 P.2d 223, 224 (1972)).

**5.** In *Boykin,* the United States Supreme Court specified three constitutional rights waived by a defendant who tenders a guilty plea: the privilege against compulsory self-incrimination; the right to trial by jury; and the right to confront one's accusers. 395 U.S. at 243, 89 S.Ct. at 1712.

**6.** A number of our opinions contain statements to the effect that a guilty plea cannot be accepted absent a record affirmatively showing a factual basis for the plea. *See Wilson v. People,* 708 P.2d 792, 798 (Colo.1985); *People v. Murdock,* 187 Colo. 418, 419, 532 P.2d 43, 44 (1975); *People v. Alvarez,* 181 Colo. 213, 217, 508 P.2d 1267, 1270 (1973). However, in these cases the requirement that a factual basis support the plea appears to find its source in Crim.P. 11, not in the state or federal constitution.

**7.** Under these circumstances, at least one federal circuit court has held that a judge must inquire fully into the facts to determine that a factual basis exists for the plea as "an essential part of the constitutionally-required finding of a voluntary and intelligent decision to plead guilty." *Willett v. State,* 608 F.2d 538, 540 (5th Cir.1979); *see generally* J. Bond, *Plea Bargaining and Guilty Pleas* § 3.55(c)(3) (2d ed. 1983).

Our cases have recognized that the degree of explanation that a court should provide depends on the nature and complexity of the crime and that no particular litany need be followed in accepting a tendered plea of guilty. *Harshfield,* 697 P.2d at 394; *Leonard,* 673 P.2d at 39. However, a showing that defense counsel gave some explanation to his client of the charge to which the guilty plea is tendered does not by itself sufficiently demonstrate that the defendant knew the critical elements of the crime when the plea was entered. *Watkins,* 655 P.2d at 837; *People v. Mason, Jr.,* 176 Colo. 544, 545–46, 491 P.2d 1383, 1383–84 (1971).[8]

Where the crime to which the plea is entered is relatively simple, reading the information to the defendant is an acceptable method of advising him of the nature of the offense charged. *People v. Trujillo,* 731 P.2d 649, 651 (Colo.1986); *Leonard,* 673 P.2d at 39; *see also People v. Muniz,* 667 P.2d 1377, 1382–83 (Colo.1983). Thus, further explanation is unnecessary where the crime is " 'readily understandable to a person of ordinary intelligence from a mere reading of the information without further explanation by the court.' " *Leonard,* 673 P.2d at 39 (quoting *Muniz,* 667 P.2d at 1383). Offenses that we have considered to be understandable by persons of ordinary intelligence include aggravated robbery, *Wright v. People,* 690 P.2d 1257 (Colo.1984); *People v. Edwards,* 186 Colo. 129, 526 P.2d 144 (1974), and second degree murder, *People v. Gorniak,* 197 Colo. 289, 593 P.2d 349 (1979).

Crimes of greater complexity require a greater showing of the defendant's understanding of the critical elements of the crime to which the plea is entered. *Leonard,* 673 P.2d at 39. Offenses that we have considered to be of greater complexity include conspiracy to commit burglary, *Leonard,* 673 P.2d at 41–42; *Muniz,* 667 P.2d at 1383–84, breaking and entering a motor vehicle with intent to commit the crime of larceny, *Harshfield,* 697 P.2d at 395, conspiracy to commit escape, *Watkins,* 655 P.2d at 838, and assault to rob, *People v. Sanders,* 185 Colo. 356, 524 P.2d 299 (1974).

Regardless of the complexity of the crime, however, the record must demonstrate that the defendant understood any mental state element of the crime to which he pled guilty. *See Harshfield,* 697 P.2d at 394–95; *Gorniak,* 197 Colo. at 291–92, 593 P.2d at 350–51; *Wilson,* 708 P.2d at 796–97. Moreover, an inquiry by the court into whether the defendant understands the nature of charges against him is of utmost importance in connection with charges requiring proof of specific intent. *People v. Kelly,* 189 Colo. 31, 536 P.2d 39 (1975).

**B.**

A defendant attacking the constitutionality of a prior conviction in habitual criminal proceedings must make a prima facie showing that the guilty plea was unconstitutionally obtained. *Wade,* 708 P.2d at 1368; *Watkins,* 655 P.2d at 837; *Quintana,* 634 P.2d at 416. A prima facie showing means evidence that when considered in a light most favorable to the defendant, will permit the court to conclude that the conviction failed to meet relevant constitutional standards. *Watkins,* 655 P.2d at 837. Once a prima facie showing is made,

---

**8.** It may be appropriate in some circumstances to presume that the defendant has been adequately informed, either by his lawyers or at some proceeding other than the providency hearing, of the charges on which he was indicted. *Marshall v. Lonberger,* 459 U.S. 422, 436–38, 103 S.Ct. 843, 851–53, 74 L.Ed.2d 646 (1983); *Henderson,* 426 U.S. at 647, 96 S.Ct. at 2258. In *Marshall,* the United States Supreme Court found several factual findings made by the trial court significant to its conclusion that the accused's plea of guilty was voluntary and intelligent. Specifically, the trial court found that the accused was intelligent and experienced in the criminal justice system and was well-represented at all stages of the plea proceedings by competent counsel. In addition, the accused's counsel stipulated at the providency hearing and in the accused's presence that the indictment, which contained an explanation of the charges against him, sustained the plea of guilty. Finally, the transcript of the providency hearing revealed that a person of the accused's intelligence and experience would have understood certain statements made by the presiding judge as referring to the indictment's charge of attempt to kill. *Marshall,* 459 U.S. at 435–38, 103 S.Ct. at 851–53.

the conviction is not admissible unless the prosecution establishes by a preponderance of the evidence that the conviction was obtained in accordance with the defendant's constitutional rights. *Wade,* 708 P.2d at 1368; *Watkins,* 655 P.2d at 837; *Quintana,* 634 P.2d at 416.

### III.

### A.

The facts pertinent to the resolution of the issues before us are taken from the documents and transcripts relating to the defendant's prior convictions. We turn first to the guilty plea entered in Spokane County, Washington, on June 6, 1980, to a charge of second degree assault. The record of this conviction includes a copy of the information and a transcript of the providency hearing, at which Lacy appeared and was represented by an assistant public defender.

At the outset of the hearing, the prosecutor represented that "the warrant has been read"[9] and that the defendant and his counsel had received a copy of the information. The information states the charge as follows: "That the defendant, JOHN WESLEY LACY, JR., in Spokane County, Washington, on or about March 6, 1980, with intent to commit the felony of Second Degree Rape, did knowingly assault Geraldine A. Muse, a human being." The transcript of the hearing reveals that the following exchange took place between the court and Lacy concerning the nature of the charge to which he was offering a plea of guilty:

THE COURT: You are appearing here with your attorney, Mr. Hemingway; you have talked to him about this; you understand this charge?

MR. LACY: Yes, sir.

THE COURT: You know that you're accused of the crime of Second Degree Assault, and that the maximum sentence for this is ten years?

MR. LACY: Yes.

The court then informed the defendant of the possible penalties upon conviction and of his constitutional rights, and obtained his acknowledgment that he understood these matters and also understood that by pleading guilty he would waive his constitutional rights. The defendant then offered his plea of guilty and acknowledged that it was made freely and voluntarily and was not based on threats or promises. The court noted that the defendant acknowledged that when earlier asked to state what he did that caused the charge to be filed, the defendant said he choked the victim. Thereafter, the prosecuting attorney, in Lacy's presence, described in some detail the facts of the case as they were set forth in a report.

Lacy claims that this plea was invalid for two reasons: First, that he was not informed that the prosecution would have to prove all of the elements of the crime beyond a reasonable doubt; second, that he was not informed of the mental state necessary to commit the crime of second degree assault.

We reject Lacy's contention that the Spokane County Superior Court's failure to advise him of the prosecution's burden of proof renders his plea constitutionally infirm. This claim was resolved adversely to Lacy in our decision of *People v. Wade,* 708 P.2d at 1370, and we adhere to the view expressed in that opinion that due process does not require specific advisement of the prosecution's burden of proof in criminal trials. However, we conclude that the defendant's 1980 conviction is constitutionally infirm because the record does not establish that Lacy understood the critical mental state element of the crime with which he was charged.

The transcript of the 1980 providency hearing, at which the defendant pled guilty, fails to show that the court explained to Lacy any of the elements of the crime of second degree assault. The crime of second degree assault as it was defined in the information included the following

---

**9.** The record does not appear to contain a record of the "warrant" referred to by the prosecuting attorney.

critical elements: (1) knowingly assaulting a human being, (2) with intent to commit the felony of second degree rape. The record contains no showing that the court made even a general effort to explain the mental states critical to the offense of second degree assault or to describe in any way the elements of the crime of second degree rape. In our view, the defendant's affirmative response to the court's inquiry whether he had spoken to his attorney and understood the charge does not establish that he understood the critical elements of that charge. Nor do we regard this crime as having elements that are understandable from a bare reading of the information without further explanation. Indeed, the defendant's own assertion at the providency hearing that he was accused of "choking" the victim strongly suggests that he was confused about the precise nature of the crime to which he pled guilty. As noted earlier, a court's inquiry into the defendant's understanding of the nature of the charges against him is of the greatest importance where, as here, the charges require proof of specific intent. *People v. Kelly*, 189 Colo. 31, 536 P.2d 39 (1975).

Based on the record before us, we conclude that the defendant made a prima facie showing that he lacked an understanding of the nature and elements of the crime of second degree assault. *See Watkins*, 655 P.2d at 837. The prosecution produced no evidence to carry its burden to show that the conviction was constitutionally obtained. *See id.* We therefore conclude that the trial court erred in denying Lacy's motion to dismiss the habitual criminal count relating to the 1980 felony conviction.

### B.

We next consider the guilty plea entered by Lacy in Mahoning County, Ohio, on February 11, 1976, to a charge of theft. The record relating to this conviction includes a copy of the indictment, a copy of the written plea of guilty, and a transcript of the providency hearing. The indictment charges Lacy with having knowingly obtained or exerted control over a 1964 Pontiac Catalina owned by one Elbee Billup, without the consent of Elbee Billup or a person authorized to give such consent, and with the purpose to deprive Billup of the car. The written plea of guilty, signed by Lacy and his attorney, states that Lacy had been informed by his counsel and by the court of the nature of the charge against him.[10] The transcript of the providency hearing, at which Lacy was present, reveals that the prosecuting attorney read the charge aloud. The victim, Elbee Billup, appeared at the hearing and stated: "As long as [Lacy] agreed to pay the damage to my car, naturally, I don't want to press charges against him, because I have let him have the car. He used the car without my consent before, but not this particular time. So I won't press charges against him, if it please the Court." The trial court then engaged in the following exchange with the defendant:

---

**10.** The typewritten form reads as follows:

I, John Lacy, being this day before the Court with my counsel ... and having been informed by my counsel and by the Court of all of my constitutional rights, including the following:

1. The nature of the charge or charges against me and the maximum penalty or penalties involved.

2. The effect of a guilty or no contest plea and that the Court may proceed with judgment and sentence.

3. That by my plea, I am waiving my right to a jury trial; my right to confront witnesses against me; my right to have compulsory process for obtaining witnesses in my favor; my right to require the State of Ohio to prove my guilt beyond a reasonable doubt at a trial where I can not be compelled to testify against myself, and if I elect not to testify, the Prosecuting Attorney, the Court or no one else can comment on my failure to so testify.

4. That if I were tried and convicted, that I would have a right to appeal and to have an attorney appointed to prosecute such appeal if I am indigent.

I hereby waive and reject all of these rights and withdraw my former plea of "not guilty" and enter my plea of "guilty" to the indictment charging me with the following: 2913.-02(A)(1)—Theft (F4) 6mo–1–1½ to 5.

This plea is voluntarily made and is not the result of any coercion or intimidation. No promises have been made to me by anyone to secure the above pleas.

I am able to read, have read, and fully understand the foregoing.

[THE COURT]: All right, Mr. Lacy, the charge here is a felony of the fourth degree; it's the less serious of all of our felonies. However, it is still a serious charge. And the charge is, as [the prosecuting attorney] has stated, that you very, very briefly took Mr. Billup's car without his consent on the 7th of November?

[THE DEFENDANT]: Right.

[THE COURT]: And, of course, if you did that, then you are guilty of this crime. By pleading guilty to it, you put yourself in a position where you are subject to a sentence of imprisonment of not less than six months, nor more than five years. Now this can be six months, one year, one and one-half years up to two years and a maximum of five years, do you understand that?

[THE DEFENDANT]: Yes.

The judge then explained to Lacy the constitutional rights he would waive by pleading guilty. Lacy acknowledged that he was voluntarily entering his plea and that he had signed the written plea of guilty. The court then accepted the plea.

Lacy contends that the court's failure to explain to him the critical elements of the crime with which he was charged renders the plea constitutionally defective. He also asserts that the plea was without a factual basis and therefore should have been rejected. We conclude that the defendant made a prima facie showing of the constitutional invalidity of his plea and that the prosecution failed to carry its resulting burden to establish that the plea was not constitutionally infirm. *See Watkins,* 655 P.2d at 837.

 Like the crime of second degree assault with intent to rape, the theft charge to which Lacy pled guilty in 1976 is a specific intent crime and its elements are not readily understandable without further explanation. The record of the February 11, 1976, providency hearing is entirely devoid of any accurate or understandable explanation of the charge. Although the prosecuting attorney read the charge in Lacy's presence as it was described in the indictment, the only explanation directed specifically to the defendant concerning the elements of the crime was the court's statement that the charge was that Lacy "very, very briefly took Mr. Billup's car without his consent." The court made no mention of the specific intent element of the crime of theft, i.e., the intent to deprive Billup of the car, but, to the contrary, implied that no specific intent was required to commit the offense. In addition, the statements made by Elbee Billup, the alleged victim of the crime, tended to refute the elements of the crime, and should have prompted the court to examine more thoroughly the defendant's understanding of the crime to which he was pleading guilty. Although the court was not constitutionally obligated to determine that an adequate factual basis existed to support the plea,[11] it was obligated to determine that the guilty plea was made voluntarily and understandingly. Under these circumstances, it is evident that Lacy was not given an explanation and did not evince an understanding of the true nature of the charge to which he pled guilty. Accordingly, the resulting conviction cannot be used to support a habitual criminal conviction.

The judgment of the Colorado Court of Appeals is reversed, and the cause is remanded with directions to remand to the trial court for imposition of a sentence of four years imprisonment, the alternative sentence imposed by the trial judge in the event the habitual criminal adjudication were to be reversed on appeal.

VOLLACK, J., concurs in part and dissents in part; and ROVIRA and MULLARKEY, JJ., join in the concurrence and dissent.

VOLLACK, Justice, concurring in part and dissenting in part:

I agree with the majority's finding that the defendant has made a prima facie showing of the constitutional invalidity of his 1976 guilty plea. I write separately,

---

**11.** The record contains no indication that Lacy entered the type of plea discussed in *North Car-* *olina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

however, because I disagree with the majority's conclusion that Lacy made a prima facie showing that he lacked an understanding of the nature and critical elements of second degree assault when he entered a guilty plea in 1980. I therefore dissent to Part III.A., and concur in the remainder of the majority opinion.

Lacy was represented by counsel at the providency hearing. The majority notes that Lacy's counsel had been provided with a copy of the information. The information charged Lacy with the "knowing assault" of his victim *"with intent to commit the felony of Second Degree Rape." See Noel v. Idaho*, 113 Idaho 92, 94, 741 P.2d 728, 730 (Idaho App.1987) ("A defendant must be informed of the intent element before a guilty plea can be regarded as voluntary. This requirement may be met when the information, referring to the intent element, is read to the defendant.") The trial court said to Lacy: "You are appearing here with your attorney, ... you have talked to him about this; you understand the charge?" Lacy responded in the affirmative. It is true that the court did not specify that the charge to which Lacy was pleading guilty was second degree assault "with intent to commit the felony of second degree rape." There was, however, a discussion on the record and in the presence of Lacy and his counsel regarding the disposition of the case and the filing of a "Sexual Psychopathy Petition."[1] The parties agreed that a petition in sexual psychopathy would be filed and that Lacy would be sent for the 90–day evaluation.

Most significantly, the prosecuting attorney entered a detailed account of the assault that included the information that Lacy had pulled the victim into his car "and she struggled and ... he then choked her with his hands around her neck, and she lost consciousness." When the victim regained consciousness she awoke to find her assailant sitting in the car masturbating; he again attempted to attack her and she again struggled. "Threats were made that she should comply with his demands or she would be killed, and she then stopped struggling and he was able to partially remove her blouse by unzipping it, and, again, to take her pants down to her ankles."

Normally the record contains either an explanation of the charge by the trial judge, or at least a representation by defense counsel that the nature of the offense has been explained to the accused. Moreover, even without such an express representation, it may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit.

*Henderson v. Morgan*, 426 U.S. 637, 647, 96 S.Ct. 2253, 2258, 49 L.Ed.2d 108 (1976), quoted in *Marshall v. Lonberger*, 459 U.S. 422, 436, 103 S.Ct. 843, 852, 74 L.Ed.2d 646 (1982).

Considering the record as a whole, I would conclude that the defendant sufficiently understood the mental state element of the charge—that he intended to commit rape when he assaulted Annette Muse. The prosecutor's presentation of the factual basis for the charge established the sexual nature of the assault in detail.[2] "Upon hearing this information, the defendant did not protest or attempt to withdraw his earlier guilty plea." *People v. Adrian*,

1. A Washington statute provides that if a court finds reasonable grounds to believe that a defendant is a sexual psychopath, "the court shall order said defendant confined at the nearest state hospital for observation as to the existence of sexual psychopathy" for a period not to exceed 90 days. Wash.Rev.Code § 71.06.040 (1987); *see In re Knapp*, 102 Wash.2d 466, 468, 687 P.2d 1145, 1148 (1984); *State v. Wilmoth*, 22 Wash.App. 419, 421, 589 P.2d 1270, 1271 (1979).

2. [T]he record of the providency hearing shows that the Florida court neither advised defendant of the elements of the offenses nor read the information to him. However, the testimony of the defendant and the statements of defendant's counsel clearly reveal that the defendant knew and understood the elements of the charge.

The record of the providency hearing is sufficient to show that defendant understood the critical elements of the offenses to which he pled guilty.

*People v. Henderson*, 745 P.2d 265, 267 (Colo. App.1987), *cert. denied,* (Oct. 5, 1987).

701 P.2d 45, 48 (Colo.1985). We came to a similar conclusion in *People v. Scheer*, 184 Colo. 15, 518 P.2d 833 (1974), where we held:

> The record in this case indicates that after the court accepted the guilty pleas the prosecution proceeded to state to the court and the jury a summary of the prosecution's evidence in the case, which included a full statement about the attempted holdup and shooting. Defendant Scheer and his counsel were present in the courtroom for this recitation and no objection was made.... We find that there was a factual basis in the record for the plea in this case and that defendant understandingly made his plea.

*Id.* at 21, 518 P.2d at 835–36. In addition, the defendant was present for discussions on the record with his attorney concerning the filing of a petition for his sexual psychopathy evaluation. Again, he did not protest. Based on this, I cannot conclude that the defendant did not understand the sexual nature of the assault charge. We have noted that "a factual basis may be established by the record as a whole" in concluding that reports by two psychiatrists plus the affidavit accompanying the information were sufficient to establish the factual basis for a plea. *Wilson v. People*, 708 P.2d 792, 798–99 (Colo.1985). I would find that the defendant was sufficiently aware of the nature of the charge to enter a knowing and voluntary plea of guilty.

The effect of the majority's holding is to create a "form over substance" application of Crim.P. 11 as it applies to specific intent crimes. Lacy conceded that he assaulted the victim, thus establishing the first element of the crime. I believe that the intent element—intent to commit second degree rape—was understandable from a reading of the information and from the totality of the proceedings in the record. The trial court is not required to follow a "formal ritual." *People v. Wade*, 708 P.2d 1366, 1368 (Colo.1985). The defendant conceded that he had spoken with his attorney and that he understood the charge. I therefore concur in part and dissent in part.

I am authorized to say that Justice RO-VIRA and Justice MULLARKEY join in this concurrence and dissent.