Willie Wesley HORACE,
Petitioner-Appellant,

v.

Louie L. WAINWRIGHT, Secretary,
Department of Corrections, State
of Florida, Respondent-Appellee.

No. 85-3343.

United States Court of Appeals,
Eleventh Circuit.

Feb. 14, 1986.

---

Howard W. Skinner, Jacksonville, Fla., for petitioner-appellant.

Kurt L. Barch, Asst. Atty. Gen., Tallahassee, Fla., for respondent-appellee.

Before HILL, Circuit Judge, TUTTLE and HENDERSON,[*] Senior Circuit Judges.

TUTTLE, Senior Circuit Judge:

Horace appeals from the dismissal of his petition for habeas corpus by which he seeks a reversal of his conviction of robbery and a sentence to life imprisonment in the Circuit Court in Alachua County, Florida on January 7, 1966. Horace was subsequently placed on life probation, and is therefore not now in custody.

## I. STATEMENT OF THE CASE

### A. *Historical Background*

On August 5, 1950, Horace was duly adjudged to be incompetent (dementia praecox) and was committed to the Florida State Hospital by a county judge for Leon County, Florida, pursuant to § 394.20, Florida Statutes (1940). In December 1953, Horace escaped from the institution. A certified search of the records in Leon County, Florida in March 1977, reveals that Horace's formal adjudication of incompetency remained in effect at all times material hereto.

Subsequently, on March 14, 1955, Horace was convicted on pleas of guilty to three charges, and was sentenced to 30 years imprisonment. These convictions were reversed by the Florida Supreme Court by an opinion which contained the following language:

Respondent recognizes the rule of our cases holding that a person adjudged to

be insane is presumed to remain in that condition until it is shown that sanity has returned. While the presumption raised by the adjudication is not conclusive, the effect of the decisions is that it must be recognized unless and until it is overcome by a contrary finding or proof that at a particular time the party previously adjudged incompetent was in fact of sound mind. In the situation at bar, the rule clearly requires that the judgments and sentences imposed against petitioner, as well as his plea to the charges against him, be vacated and set aside.

111 So.Rep.2d 670, 671 (1959) (footnote omitted).

Upon remand, upon receipt of a report from a doctor appointed to determine Horace's sanity, November 11, 1959, the court ordered Horace "readmitted to Florida State Hospital for a period of three to six months to more accurately determine [his' mental status.]" On August 1, 1960, the court entered an order indicating that the examination had been completed "and that [Horace] is not considered psychotic." The next record available reflects that on September 26, 1960, Horace was convicted by a petit jury of breaking and entering and received a five year sentence with credit for time served.

### B. *Contested Conviction* [1]

In 1965, Horace was charged with robbery in Alachua County, Florida. On September 24, 1965, the Honorable James C. Atkins, Jr. appointed the public defender and the information was read to Horace. No penalties were mentioned. Appointed counsel entered a plea of not guilty and not guilty by reason of insanity. Medical doctors, Josh D. Davis and Henry L. Lyons, were appointed by the court to examine Horace. On December 6, 1965, a different public defender appeared before a different judge and copies of the doctors' reports

---

[*] See Rule 3(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

1. The statement contained under this subdivision has been accepted by the parties as accurate under the following statement in the state's

brief: "The statement of facts contained on pp. 7–11 of appellant's brief generally appear to be an accurate summary of the facts." The statement contains all the relevant facts almost verbatim as stated by the appellant.

were handed to the judge. Dr. Lyons' letter states that it was his "impression" that Horace was competent at the time of the act and "competent now" and able to cooperate with counsel in his defense. The report of Dr. Davis states that "Horace has a personality disorder which is essentially of no consequence to the court" and it was his "impression that Horace [was malingering] in contrast to being psychotic or insane." Dr. Davis' report contains no specific findings as to competency at the time of the act or competency to stand trial.

Then at the hearing, defense counsel stated: "The defendant is going to waive this sanity hearing at this time and announce his competency to be tried." The judge found Horace competent to stand trial based on the two reports and the public defender's statement. The judge said: "Whether he was crazy when he did it would be a question for the jury, I would assume. Or insane." (sic)

On January 7, 1966, the parties appeared before the trial court. Thereupon, defense counsel moved to withdraw the plea of not guilty and not guilty by reason of insanity and entered a plea of guilty. The judge asked counsel if he "discussed this matter with the defendant and the nature of the charge and all the necessary elements." Counsel responded: "Yes, Your Honor, and I have had the case thoroughly investigated." The court then asked Horace his age and counsel made a one sentence statement in mitigation referring to Horace's "long history of mental disturbance." The judge asked who the victim was. The court then adjudged Horace guilty and asked if Horace was married and how far he went in school. The judge, who apparently had his rap sheet, noted that Horace started having trouble with the law in 1945. The judge then asked about the location of an apparent 30 year sentence Horace had received. A prosecutor stated: "Levy County, I believe." The court asked Horace if he had filed a petition on the *Gideon* case. When Horace said "yes," the prosecutor corrected him and advised that "some time in the past there had been an adjudication of incompetency and following that the sentence was set aside by the appellate court;

he was reexamined and found to be competent and a subsequent sentence was again imposed in Levy County—for I don't know what number of years." Another prosecutor remarked "five years." The judge asked if he served his time and the prosecutor said: "Yes." Thereupon, the court sentenced Horace to confinement in the Florida State Prison for the duration of his natural life. Thus, the entire guilty plea and sentencing transpired with no mention of any constitutional rights or factual basis for the plea. None of the transcripts mentioned penalty until it was imposed. No finding of sanity at the time of the act was made by the court. The court did not ask Horace if he was in fact guilty. Horace was paroled for lifetime supervision on September 24, 1974.

### C. Subsequent Indictment and Competency Determination

On January 18, 1977, Horace was indicted in the United States District Court, Northern District of Florida for bank robbery. The United States District Court committed Horace to the Medical Center at Springfield, Missouri, for competency assessment. Three months later, the federal court held a competency hearing and found Horace not competent to stand trial. Horace was sent back to Springfield for further mental examinations to determine whether he was likely to regain his competency to stand trial. On February 10, 1978, United States District Judge, the Honorable William Stafford, found that there was no substantial likelihood that Horace would regain his competency within the foreseeable future, and he dismissed the federal indictment, and released Horace to the sheriff of Leon County, Florida.

### II. THE ISSUES

After careful consideration of the record, we conclude that the following issues are before this Court:

1. Was Horace's mental competency adequately established at the time of the trial and at the time that his counsel conceded competency to stand trial, and competency to plead guilty and enter such a plea?

2. Does the record show that when it accepted the plea of guilty the court could know the accused had an understanding of the "consequences of the plea," the law prior to *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969)?

3. Whether Horace's contentions in regard to the above issues should be barred because of the rule of procedural default or on the ground of laches.

### III. DISCUSSION

■ 1. The State does not contest appellant's argument that an accused cannot under the law of Florida be "tried, sentenced or executed while insane." In fact, the court said as much in *Horace v. Culver*, 111 So.2d 670, the case which was reversed in favor of the present appellant on his earlier conviction. The court there said:

The decided cases adequately dispose of the contention that any burden might rest upon the disabled party in such circumstances to inform the court or formally plead his status. An accused cannot under our law be tried, sentenced or executed while insane, and the ignorance or good faith of the court and prosecuting officers does not serve to validate a proceeding conducted in violation of this precept.

111 So.2d at 671.

The question then becomes "was Horace 'sane' or 'insane' at the time his counsel pleaded guilty on his behalf at the trial at issue here." [2] The Florida Supreme Court, again in *Horace*, answered that question also. The court said:

... This court has however previously approved the use of the writ of habeas corpus to set aside a judgment of conviction in circumstances very similar to those here involved, where a prior adjudication of incompetence had not, at the time of sentence, been *formally* controverted or overcome and we affirm the conclusions reached in that case. (Emphasis added.)

The case referred to in *Horace* is *Perkins v. Mayo*, 92 So.2d 641, at p. 644 where the court said:

It is last contended that having been adjudicated a mental incompetent by the Circuit Court of Leon County, petitioner is presumed to have remained so, until a formal adjudication of competency, and being so the adjudications and sentences imposed by the court on May 2, 1950, are illegal and void. We think there is merit to this contention.... Petitioner having been adjudicated mentally incompetent Feb. 15, 1949, he is presumed to remain in that state until a *proper hearing* is held and he is adjudicated to be mentally competent *as provided by Section 917.-01(2), Florida Statutes [F.S.A.] (1949)*. It is accordingly our view that petitioner should be remanded to the custody of the sheriff of Leon County and by said sheriff delivered to the Circuit Court for further proceedings *in accordance with Section 917.01, Florida Statutes, F.S.A.* ...

Section 917.01(2) of the Florida Statutes of 1949 provides as follows:

[I]f, after a defendant has been committed to an institution as insane, the proper officer of such institution is of the opinion that the defendant is sane, he shall report this fact to the court which conducted the hearing. If the officer so reports, the court shall fix a time for a hearing to determine whether the defendant is sane. This hearing shall be conducted in all respects like the original hearing to determine the defendant's sanity.

The manner of conducting "the original hearing" referred to is outlined in Section 917.01(1). It deals with the issue of a defendant giving reasonable ground to believe that he is insane prior to or during a trial. It provides as follows:

917.01 *Examination of defendant's mental condition to determine whether*

---

**2.** We use the term "sane" as shorthand for mental competency because that was the term generally in use at the time of the cited cases.

*he shall be tried.*—(1) If before or during trial the court, of its own motion, or upon motion of counsel for the defendant, has reasonable ground to believe that the defendant is insane, the court shall immediately fix a time for a *hearing* to determine the defendant's mental condition. The court may appoint two disinterested qualified experts to examine the defendant and to testify at the *hearing* as to his mental condition. Other evidence regarding the defendant's mental condition may be introduced at the *hearing* by *either party.*

(Emphasis added.)

The acceptance by the *Horace* court of the *Perkins* decision, also by the Florida Supreme Court, makes it perfectly clear that under the Florida law, once there is a formal adjudication of insanity of a person charged with a crime, there must also be a formal hearing before the presumption of insanity terminates.

Here, although, just prior to the aborted trial, the trial court received letters from two medical doctors which caused him to conclude that Horace was competent to stand trial, the trial court made no effort to determine whether Horace was competent at the time of the commission of the act. The court stated that that decision would be made by the jury. Instead, however, of that issue being submitted to the jury, a decision was made by Horace's lawyer to withdraw the plea of not guilty by reason of insanity and to enter a plea of guilty. In other words, there was no hearing of any kind on the issue of mental competence at the time of the commission of the act. The submission of *ex parte* letters by the doctors and the trial judge's determination that Horace was competent to stand trial also lacked all of the characteristics of a formal hearing as contemplated by the Florida Statutes. Nevertheless his lawyer deprived Horace of his right to introduce evidence and to cross-examine the medical experts, rights which are contemplated under the statute.

**3.** In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc), the court adopted as binding precedent all of the decisions of the

2. Unless we decide that appointed counsel may legally make the decision that Horace was mentally competent without the statutory hearing, we must hold counsel's waiver of these rights to be void. We are of the opinion that our decision that as a matter of law, Horace was not competent at the time of the plea requires a holding that he was incapable of making "an intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). The Supreme Court stated in *Pate v. Robinson,* 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966): "It is contradictory to argue that a defendant may be incompetent and yet knowingly or intelligently waive 'his right to have the court determine his capacity to stand trial.'" 384 U.S. at 384, 86 S.Ct. at 841. Moreover, in our recent case, *Adams v. Wainwright,* 764 F.2d 1356 (11th Cir.1985), we said in discussing *Pate v. Robinson:*

> The secondary basis for its holding was that '[i]n any event,' waiver had actually occurred because Robinson had made his sanity an issue throughout his trial. *Pate v. Robinson, supra,* 383 U.S. at 384, 86 S.Ct. at 841. Later decisions in this Circuit have applied the initial rationale of *Pate v. Robinson* in such a manner as to obviate the need for any inquiry into whether a convicted defendant who is alleging mental incompetency actually waived his right to a competency hearing at the time of his trial. These decisions have squarely held that waiver cannot occur. *See Zapata v. Estelle, supra,* 588 F.2d at 1021; *Nathaniel v. Estelle, supra,* 493 F.2d at 798; *Bruce v. Estelle, supra,* 483 F.2d at 1037.

764 F.2d 1358.

We, therefore, conclude that at the time of his plea, Horace must be presumed to have been still incompetent.

Even, however, without regard to the mental competence of an accused at the time of entering a plea of guilty, this Court's predecessor [3] said:

former Fifth Circuit handed down prior to the

If this were a federal trial, or if it were a state trial held subsequent to June 2, 1969 [the date of the Supreme Court case, *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274], it would be clear, without discussion, that a plea accepted as was this one could not stand. Federal pleas of guilty may not be accepted by the trial judge under Rule 11 of the Federal Rules of Criminal Procedure "without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge *and the consequences of the plea.*" In *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274, the Court stated: "It was error, plain on the face of the record, for the trial judge to accept petitioner's guilty plea without an affirmative showing that it was intelligent and voluntary."

*Wade v. Wainwright*, 420 F.2d 898 (5th Cir.1969) (Emphasis added.)

The Supreme Court has subsequently stated that the holding in *Boykin v. Alabama* is not retroactive, so the Court in *Wade* announced the pre-*Boykin* law of the Circuit. The Court said:

However, this Court, as have other courts, has held, in construing the language of the concept of voluntariness that it comprehends an understanding of the "consequences of the plea." *Trujillo v. United States*, 5 Cir., 1967, 377 F.2d 266; *Kotz v. United States*, 8 Cir., 1965, 353 F.2d 312. *Von Moltke v. Gillies*, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 (1948) required, as a prerequisite for a valid waiver an "apprehension of ... the range of allowable punishments."

As this court has held, and, of course, as no one can now seriously doubt, "it is well settled that a conviction, whether in a state or federal court, which is based upon an involuntary or coerced plea of guilty, whether it be unfairly obtained or *given through ignorance*, fear or inadvertence, is invalid as inconsistent with due process of law." (Emphasis added). *Busby v. Holman*, 5 Cir., 1966, 356 F.2d 75, 78. In light of the decisions to the effect that the term "ignorance," when related to the entering of a plea of guilty, comprehends a lack of knowledge as to the consequences of the plea, it seems clear that the failure of the trial court *to assure itself* with respect to ascertaining *whether the accused knew the outer limits of the penalty which he could suffer upon entering the plea*, is inconsistent with due process of law, as understood long before the most recent pronouncements in Boykin.

420 F.2d at 900 (footnote omitted) (emphasis added.)

Here, the statement of the case above comprises the complete report of the colloquy between the court, the defendant, his counsel and the prosecutors, who answered several of the questions asked by the court at the hearing on the acceptance of the guilty plea. From this short discussion, it is clear that the trial court "failed to assure itself with respect to ascertaining whether the accused knew the outer limits of the penalty which he could suffer upon entering the plea." *Wade, supra*, at 900. It is especially clear that Horace was told of none of his constitutional rights that he was "waiving."

The only hearing held by the magistrate on petitioner's habeas corpus petition was with respect to this particular matter. The only testimony as to whether Horace knew of the outer limits of the sentence that he could receive was given by him. He denied having any such knowledge. The magistrate made a finding to the effect that he did not credit the testimony by Horace, and therefore, found that he *had* such knowledge. While, of course, it was within the competence of the magistrate to find that Horace's testimony was not believable, this did not obviate the requirement that there be *proof* that Horace actually *did have* such knowledge. There is no such proof in this record, and the magistrate's finding that Horace knew of the life sentence possibility is clearly erroneous, as was the trial

close of business on September 30, 1981. *Id.* at 1209.

court's finding approving the magistrate's report.

3. The district court denied relief to petitioner on his claims of incompetency to stand trial, insanity at the time of the act, and unknowing and involuntary guilty plea on the basis of the procedural default rule of *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). The Court concluded that Horace's failure to take a direct appeal operated as a waiver of these claims. That this holding was error is made plain by our recent case in the above-cited *Adams v. Wainwright,* where we said:

> Binding precedent fully supports the petitioner's contention that the procedural default rule of *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), does not operate to preclude a defendant who failed to request a competency hearing at trial or pursue a claim of incompetency on direct appeal from contesting his competency to stand trial and be sentenced through post-conviction proceedings. *See Zapata v. Estelle,* 588 F.2d 1017, 1021 (5th Cir.1979); *Nathaniel v. Estelle,* 493 F.2d 794, 798 (5th Cir. 1974); *Bruce v. Estelle,* 483 F.2d 1031, 1037 (5th Cir.1973). Indeed, as the Supreme Court stated in *Pate v. Robinson,* 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966), "it is contradictory to argue that a defendant may be incompetent, and yet knowingly or intelligently 'waive' his right to have the court determine his capacity to stand trial." *Id.* at 384, 86 S.Ct. at 841; *Bruce v. Estelle, supra,* 483 F.2d at 1037. Therefore, the district court below erred in holding that the petitioner was procedurally barred from pursuing a claim of mental incompetency in a federal habeas corpus proceeding.

*Adams v. Wainwright,* 764 F.2d 1356 at 1359 (11th Cir.1985).

It is clear, therefore, that these claims cannot be barred on the basis of the procedural default rule.

The same ruling must apply to the defense of laches under Rule 9(a) of the rules for application of habeas corpus. This rule provides:

> Rule 9(a). Delayed Petitions. A petition may be dismissed if it appears that the state of which the respondent is an officer has been prejudiced in its ability to respond to the petition by delay in its filing unless the petitioner shows that it is based on grounds of which he could not have had knowledge by the exercise of reasonable diligence before the circumstances prejudicial to the state occurred.

The courts have uniformly held that this rule is a rule based upon the equity principle of laches, *McDonnell v. Estelle,* 666 F.2d 246 (5th Cir.1982), *Alexander v. State of Maryland,* 719 F.2d 1241 (4th Cir.1983). The cases also hold that mere delay is not sufficient ground for dismissal on the basis of laches. The state must show a particularized prejudice to its ability to respond to the allegations in the petition. *McDonnell, supra; Henson v. Estelle,* 641 F.2d 250 (5th Cir.1981).

No authority has been cited to us to show that a delay in the filing of a petition for habeas corpus by a person incompetent at the time of the original trial and, presumably incompetent subsequent to that time, has been dismissed on the ground of laches. We consider it inconsistent with the mental status of the petitioner here to hold that he "knew or should have known" of either his right or obligation to raise these issues sooner especially in light of his explanation that he lacked funds and knowledge to take advantage of a lawyer's advice as to what, if any, protections were available to him.

It is inconsistent to hold that Horace failed to act timely with respect to the remedies he now seeks, during the time when he was presumptively incompetent as it would to find him barred from taking advantage of the use of the writ of habeas corpus because of his procedural defaults.

The judgment is REVERSED and the case is REMANDED to the district court for further proceedings not inconsistent with this opinion.

HILL, Circuit Judge, specially concurring:

I agree with the opinion insofar as it discusses the fact that petitioner had been adjudicated mentally incompetent and never formally restored to competency. For that reason, the writ must be granted.

Resolution of the competence issue alone requires reversal. I would not reach the question of whether the plea was knowing and voluntary under the procedural approach used by the state trial judge when the plea was taken some twenty years ago.