**Larry Eugene BLEHM,
Petitioner/Cross–
Respondent,**

v.

**The PEOPLE of the State of Colorado,
Respondent/Cross–Petitioner.**

**No. 90SC37.**

Supreme Court of Colorado,
En Banc.

Sept. 23, 1991.

Rehearing Denied Oct. 21, 1991.

David F. Vela, Colorado State Public Defender, Thomas R. Williamson, Deputy State Public Defender, Denver, for petitioner/cross-respondent.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., John Daniel Dailey, Deputy Atty. Gen., Robert Mark Russel, First Asst. Atty. Gen., Denver, for respondent/cross-petitioner.

Justice QUINN delivered the Opinion of the Court.

The defendant, Larry Eugene Blehm, unsuccessfully appealed his conviction of second degree burglary of a dwelling and his adjudication of habitual criminality to the court of appeals. In affirming the judgment, the court of appeals in *People v. Blehm*, 791 P.2d 1177 (Colo.App.1989), held that Blehm's prior Colorado felony convictions based on pleas of guilty and *nolo contendere* could constitute valid predicates for an habitual criminal adjudication even though Blehm previously had been adjudicated insane in other criminal proceedings and had not been formally restored to sanity when the pleas were entered. The court of appeals also held that Florida law prohibited a defendant from pleading guilty or *nolo contendere* subsequent to an adjudication of insanity but prior to any formal restoration to sanity and that, solely on the basis of that Florida rule of substantive law, two of Blehm's Florida convictions resulting from pleas of guilty and *nolo contendere* were constitutionally involuntary and hence inadmissible in the Colorado habitual criminal proceeding. The court of appeals went on to affirm Blehm's conviction for second degree burglary of a dwelling and his adjudication as an habitual criminal because the trial record established the constitutional validity of at least three of his prior felony convictions. We agree with that part of the court of appeals' decision which holds that a defendant's prior insanity adjudication does not render the defendant incompetent as a matter of law to enter a plea of guilty or *nolo contendere* to a Colorado felony charge subsequent to the insanity adjudication but prior to any formal restoration to sanity. We disagree, however, with that part of the court of appeals' decision which relies on Florida substantive law as the sole standard for determining the constitutional admissibility of a prior conviction in a Colorado habitual criminal proceeding. Because we are satisfied that the record clearly establishes the constitutional validity of at least three of Blehm's prior felony convictions, we affirm the judgment of the court of appeals.

## I.

The facts are basically undisputed. Following the disappearance of items of personal property from a residence in Red Feather, Colorado, in March 1985, Blehm was charged with second degree burglary of a dwelling.[1] Blehm also was charged with habitual criminality pursuant to Colorado's habitual criminal statute, which provides that a person who has been previously convicted of three prior felonies, separately brought in Colorado or elsewhere and arising out of separate and distinct criminal episodes, shall be sentenced to life imprisonment upon conviction of the substantive felony and upon the jury's verdict that the defendant has been previously convicted of the three prior felonies. §§ 16–13–101 to –103, 8A C.R.S. (1986 & 1990 Supp.). The criminal information alleged seven separate counts of prior felony convictions that Blehm incurred between 1970 and 1979. Two counts alleged a 1970 Florida conviction for robbery and a 1979 Florida conviction for escape. Five other counts alleged the following Colorado convictions: a 1975 conviction in Mesa County for felony theft; another 1975 conviction in Mesa County for escape; a 1976 conviction in Fremont County for conspiracy to commit escape; a 1978 conviction in Boulder County for aggravated robbery; and another 1978 conviction in Boulder County for conspiracy to commit escape.

Blehm filed a motion to dismiss the habitual criminal counts on the ground that the prior felony convictions were constitutionally infirm because they resulted from involuntary pleas of guilty or *nolo contendere* to various criminal charges. The district court conducted a hearing on Blehm's motion, and the evidence admitted at the hearing established the following sequence of events underlying habitual criminal charges.

1. Second degree burglary of a dwelling is a class 3 felony. § 18–4–203, 8B C.R.S. (1986).

2. Blehm testified at the hearing on his motion to dismiss that he was charged with burglary in the Weld County case. We note, however, that a 1977 report of the state hospital which recommended Blehm's release stated that Blehm was

In 1968 Blehm was charged with burglary in Weld County, Colorado, and was found not guilty by reason of insanity and was committed to the Colorado State Hospital.[2] In 1970 Blehm escaped from the hospital and went to Florida. Later that year he was arrested in Taylor County, Florida, and charged with robbery, to which he pled guilty and was sentenced to a term of thirty years.

While in a Florida jail awaiting a federal habeas corpus hearing, Blehm again escaped and went to Miami. Blehm was arrested in 1972 for a Miami robbery. He was evaluated by doctors at the South Florida State Hospital and was adjudicated insane and returned to Dade County, Florida, where he subsequently escaped and fled to Colorado.

In 1974 Blehm was arrested in Larimer County, Colorado, and charged with kidnapping and robbery, was found not guilty by reason of insanity, and was again committed to the Colorado State Hospital in 1975. He once again escaped from the hospital and went to California and then to western Colorado.

In 1975 Blehm was arrested in Mesa County, Colorado, and charged with burglary. While in jail he escaped, but was apprehended a few days later and was charged in a separate prosecution with escape. He pled guilty to felony theft and escape and received consecutive indeterminate sentences of eight and five years respectively to the Colorado State Penitentiary.

Blehm again escaped from the Colorado State Penitentiary in 1975, was later arrested, and in 1976 was charged with and pled guilty to conspiracy to commit escape in Fremont County, Colorado. He was sentenced to a ten-year term, consecutive to the sentences he then was serving, and later was transferred to the Colorado State Hospital because of his 1968 insanity com-

committed to the hospital in 1968 on an insanity adjudication for the crimes of aggravated robbery, conspiracy to commit aggravated robbery, menacing by use of a deadly weapon, first degree kidnapping, false imprisonment, and possession of a dangerous drug.

mitment. In 1977 Blehm was discharged from the hospital upon a determination that he no longer suffered from a mental disease or defect and had been restored to sanity. Upon his release from the hospital, he was transferred to a county jail but was later released on bail and went to Boulder County.

In 1978 Blehm was arrested in Boulder County for aggravated robbery and escaped while in custody. He pled guilty to aggravated robbery and, in a separate prosecution, entered a *nolo contendere* plea to the crime of conspiracy to escape. Blehm received concurrent 7–15 year sentences to the state penitentiary on these convictions.

Blehm was later extradited to Florida, and in 1979 he entered a *nolo contendere* plea to a 1972 escape charge in Dade County, Florida. Finally, in 1980, a federal district court in Florida discharged him from custody due to Florida's failure to conduct an evidentiary hearing on Blehm's competency to plead guilty in the 1970 Florida robbery prosecution within the time frame previously ordered by the federal court.

After considering the evidence underlying the habitual criminal charges, the district court denied Blehm's motion to dismiss. The case then proceeded to jury trial on the charge of second degree burglary of a dwelling. After the jury returned a guilty verdict, the prosecution presented evidence concerning Blehm's prior convictions. Blehm offered no evidence to controvert his prior felony convictions, and the jury found that Blehm had been convicted of the seven prior felonies charged against him in the information. The district court sentenced Blehm to life imprisonment as an habitual criminal.

Blehm appealed his conviction to the court of appeals, which affirmed the judgment. Addressing Blehm's claim that the Colorado convictions were unconstitutionally obtained, the court of appeals initially noted that a Colorado conviction predicated upon a plea of guilty by a defendant previously adjudged insane "may be valid notwithstanding that he had not been judicially declared to have been restored to sanity"

as long as the defendant was competent when the guilty plea was entered and the conviction was otherwise constitutionally valid. 791 P.2d at 1180. From this premise, the court of appeals concluded that Blehm's 1975 Mesa County conviction for escape was constitutionally infirm because the court, in accepting Blehm's guilty plea, did not apprise him of the culpability element for escape and because the record of the providency hearing did not affirmatively demonstrate that Blehm understood that element. The court of appeals, however, was satisfied that Blehm's other Colorado convictions—namely, the 1975 Mesa County conviction for felony theft, the 1976 Fremont County conviction for conspiracy to commit escape, the 1978 Boulder County conviction for aggravated robbery, and the 1978 Boulder County conviction for conspiracy to commit escape—were constitutionally valid because Blehm's pleas to the underlying felonies were "untainted by any defect" and because Blehm "failed to make a *prima facie* showing that these guilty pleas were unconstitutionally obtained." 791 P.2d at 1181.

The court of appeals then addressed the constitutional validity of Blehm's 1970 and 1979 Florida convictions for robbery and escape. Relying solely on a Florida rule which provided that a defendant who is adjudicated insane cannot be convicted of a subsequent criminal offense unless and until he has been formally restored to sanity, the court of appeals concluded that Blehm's earlier 1968 Colorado insanity adjudication precluded him from entering a valid guilty plea to the 1970 Florida robbery charge and his 1972 Florida insanity adjudication precluded him from pleading *nolo contendere* in 1979 to the Florida escape charge. 791 P.2d at 1180. Because, however, Blehm's four Colorado felony convictions were validly imposed in separate prosecutions, the court of appeals affirmed the judgment of conviction and the habitual criminal adjudication.

We granted Blehm's petition for certiorari to consider whether the court of appeals properly affirmed his adjudication of habitual criminality. We also granted the Peo-

ple's cross-petition to consider whether the court of appeals was correct in relying solely upon Florida substantive law in assessing the constitutional validity of Blehm's 1970 Florida conviction for robbery and his 1979 Florida conviction for escape.

## II.

In challenging his habitual criminal adjudication, Blehm first argues that his insanity adjudications in Colorado and Florida created a continuing presumption of insanity which rendered him legally incompetent to plead guilty or *nolo contendere* to the subsequently filed Colorado criminal charges in the absence of a formal restoration to sanity. We reject Blehm's claim.

## A.

■ There is no question that an insanity adjudication "results in a presumptive continuation of a state of mental incapacity until it is shown that sanity has been restored." *People v. Chavez*, 629 P.2d 1040, 1048 (Colo.1981). However, "we have never held or implied that this presumption is conclusive and irrebuttable." *People v. Giles*, 662 P.2d 1073, 1075–76 (Colo.1983). Indeed, there is a sharp distinction between insanity and incompetency to proceed. A person is legally insane when the person is "so diseased or defective in mind at the time of the commission of the act as to be incapable of distinguishing right from wrong with respect to that act." § 16–8–101(1), 8A C.R.S. (1986). Insanity is an affirmative defense to a criminal charge, § 18–1–802, 8B C.R.S. (1986), and "represents a judicial determination that an accused is not legally responsible for a past criminal act by reason of a mental disease or defect which existed at the time the act was committed." *Giles*, 662 P.2d at 1075. In contrast, incompetency is not a defense to a criminal act, but merely relates to the mental capacity of the accused to defend against a criminal charge. *Coolbroth v. District Court*, 766 P.2d 670, 672 (Colo.1988). A person is incompetent to proceed when that person "is suffering from a mental disease or defect which renders him incapable of understanding the nature and course of the proceedings against him or of participating or assisting in his defense or cooperating with his defense counsel." § 16–8–102(3), 8A C.R.S. (1986). An accused, therefore, well may be competent to defend against a pending criminal charge and yet not be legally responsible for the criminal act by reason of insanity at the time of its commission.

■ Our prior decisions expressly acknowledge this manifest distinction between insanity and incompetency. We have held, for example, that an insanity adjudication is not *res judicata* on the question of a defendant's culpability for future criminal acts. *Giles*, 662 P.2d at 1076. We also have held that the doctrine of collateral estoppel does not operate to bar a subsequent prosecution for a crime committed shortly after a criminal act for which an accused has been adjudicated insane. *See People v. Kernanen*, 178 Colo. 234, 497 P.2d 8 (1972) (doctrine of collateral estoppel not a bar to prosecution for robbery committed within three hours of prior robbery for which defendant adjudicated not guilty by reason of insanity). Simply put, there is no support in either law or logic for the proposition that the doctrines of *res judicata* and collateral estoppel somehow operate to elevate a prior insanity adjudication to the status of a conclusive presumption of an accused's legal incompetency in a prosecution for a criminal act committed subsequent to the insanity adjudication but prior to a formal restoration to sanity.

## B.

■ Because incompetency relates directly to an accused's capacity to understand the nature and the course of the criminal proceeding against him and to participate, assist, and cooperate with defense counsel in the defense of a criminal charge, there is no question that putting a legally incompetent defendant on trial violates due process of law. *E.g., Drope v. Missouri*, 420 U.S. 162, 171–72, 95 S.Ct. 896, 903–04, 43 L.Ed.2d 103 (1975); *Pate v. Robinson*,

383 U.S. 375, 378, 86 S.Ct. 836, 838, 15 L.Ed.2d 815 (1966); *Jones v. District Court*, 617 P.2d 803, 806 (Colo.1980). By a parity of reasoning, a judgment of conviction based on a court's acceptance of a guilty or *nolo contendere* plea from an accused who is incapable of understanding the charge, participating or assisting in his defense, or cooperating in any meaningful way with defense counsel would likewise violate due process of law. For this reason, the trial judge, the prosecuting attorney, and defense counsel are duty-bound to raise and resolve the issue of an accused's competency whenever there is some doubt about that question. *Jones*, 617 P.2d at 806; *Parks v. District Court*, 180 Colo. 202, 208, 503 P.2d 1029, 1032 (1972).

■ A trial judge must rely to a great extent on defense counsel's evaluation of the defendant's competency. Defense counsel's close contact with the defendant is a source of critical information regarding the defendant's understanding of the charge and his ability to make voluntary and rational decisions on such matters as the entry of an appropriate plea, whether to waive a jury trial, and whether to testify at trial. It has been cogently observed that defense counsel's "first-hand evaluation of a defendant's ability to consult on his case and to understand the charges and proceedings against him may be as valuable as an expert psychiatric opinion on his competency." *United States v. David*, 511 F.2d 355, 360 (D.C.Cir.1975). Also important on the issue of competency are the accused's general demeanor and interaction with defense counsel and the court during court appearances. Unless a trial judge has some reason to question the competency of an accused represented by counsel, the judge reasonably may assume that the accused does understand the nature and course of the proceedings against him and is capable of participating and assisting in his defense and cooperating with defense counsel. When a question is raised concerning the defendant's competency, however, the judge must take steps to resolve that question, and the record must contain clear evidence in support of any determination of competency before any further proceedings may validly be conducted. In resolving Blehm's claim that his prior insanity adjudications rendered him incompetent as a matter of law to enter guilty or *nolo contendere* pleas in Colorado, therefore, we must review the record of the proceedings with respect to the respective pleas that served as the predicate for Blehm's adjudication as an habitual criminal.

### C.

■ We turn first to Blehm's 1975 Mesa County conviction for felony theft. The transcript of the providency hearing discloses that Blehm was represented by counsel, was originally charged with burglary, and entered a plea bargain with the district attorney pursuant to which the more serious charge of burglary was dismissed in exchange for Blehm's guilty pleas to felony theft and escape.[3] At the providency hearing the judge asked defense counsel whether Blehm was competent to stand trial. Defense counsel responded that Blehm had twice been adjudicated legally insane, but that he was competent to proceed and was able to assist in his defense. In light of this disclosure by defense counsel, the trial judge engaged in an extensive colloquy with Blehm and questioned him about his overall mental state, his understanding of the nature of the proceedings against him, his understanding of the elements of the crimes to which he was pleading guilty, and his understanding of the constitutional rights that he was waiving by pleading guilty. Blehm exhibited no confusion whatever to the court's questions and responded clearly and precisely to each question. After the questioning, the trial judge stated for the record:

I am, I think, quite satisfied with [Blehm's] intellect and with his understanding and clarity of thought. His

**3.** We note that the court of appeals invalidated the escape conviction because Blehm was not properly advised of the culpability element necessary for that crime. Because it is unnecessary for us to address that issue, we restrict our analysis to whether the record establishes Blehm's competency to plead guilty to the crime of felony theft.

memory seems to be quite good, and what he was told yesterday he is able to recite back into the record things he has been told, and all put together seem to me to clearly indicate that he has entered his pleas voluntarily and that the Court should accept the pleas.

In our view, defense counsel's representation to the court of his client's competency, the extensive colloquy between the court and Blehm concerning his understanding of the full significance of his tendered plea of guilty, and the trial judge's action in conscientiously assessing Blehm's state of mind clearly support the conclusion that Blehm was fully competent to enter the guilty plea to felony theft.

We reach the same conclusion with respect to Blehm's 1976 guilty plea in Fremont County to conspiracy to commit escape. Blehm was represented by counsel and initially entered a plea of not guilty by reason of insanity to the charge of escape. The judge ordered a psychiatric examination of Blehm, and the examining psychiatrist filed a report with the court in which he concluded that Blehm was sane at the time of the commission of the crime charged. Blehm subsequently withdrew his insanity plea and agreed to enter a guilty plea to conspiracy to commit escape in exchange for the dismissal of the more serious charge of escape. Defense counsel did not place Blehm's competency in issue at any time, and the transcript of the providency hearing indicates that the judge questioned Blehm concerning his understanding of his constitutional rights, the crime to which he was pleading, and the penalty applicable to that offense. Although the judge's interrogation of Blehm was substantially less extensive than the questioning in the Mesa County proceeding, the record shows that the judge, prior to accepting Blehm's guilty plea, had the benefit of a recent psychiatric report of Blehm's mental status, as well as Blehm's interaction with the court during the providency hearing itself. The record, in our view, clearly demonstrates that Blehm understood the nature and course of the proceedings against him, was able to participate or assist in his defense and to cooperate with his defense attorney, and was legally competent to enter a guilty plea to the crime of conspiracy to commit escape.

We next assess Blehm's 1978 Boulder County guilty plea to aggravated robbery and his *nolo contendere* plea to conspiracy to commit escape. Blehm was charged with three counts of aggravated robbery, second-degree burglary of a dwelling, attempted second-degree sexual assault, and the commission of a crime of violence. In a separate prosecution Blehm also was charged with escape. He was represented by defense counsel during these proceedings and agreed to enter the guilty plea to aggravated robbery and the *nolo contendere* plea to conspiracy to commit escape in exchange for the dismissal of all other charges and for 7–15 year sentences concurrent with each other and concurrent with any sentence Blehm was then serving at the penitentiary. No issue concerning Blehm's competency was raised at any time. During the providency hearing the judge questioned Blehm about his mental state and his understanding of his constitutional rights, the nature of the charges to which he was pleading, and the possible penalties that could be imposed. Blehm's answers were directly responsive to the judge's questions and manifested no confusion regarding the matters discussed with him. The judge expressly found that Blehm, based on his appearance in court and his answers to the questions asked of him during the providency hearing, was competent to proceed, understood the nature of the proceedings, and had entered voluntary pleas to the charges. The record of the Boulder County proceedings demonstrates that Blehm was competent to enter pleas of guilty and *nolo contendere* to the charges of aggravated robbery and conspiracy to commit escape.[4]

We are satisfied that the record before us clearly shows that Blehm was compe-

---

4. The record shows that in 1977 Blehm was formally restored to sanity and was released from his earlier insanity commitment to the Colorado State Hospital. Blehm's restoration to sanity was thus prior to his Boulder pleas and provides further evidence of his competency.

tent to enter valid pleas to at least four Colorado felony charges—the 1975 Mesa County charge of felony theft, the 1976 Fremont County charge of conspiracy to commit escape, the 1978 Boulder County charge of aggravated robbery, and the 1978 Boulder County charge of conspiracy to commit escape [5]—each of which was separately filed against him. We thus reject Blehm's claim that his prior insanity adjudications as a matter of law constitutionally invalidated his pleas to the Colorado charges because he had not yet been formally restored to sanity when the pleas were entered.

### III.

Blehm alternatively argues that, regardless of the effect of the prior insanity adjudications on his Colorado convictions, his 1975 Mesa County guilty plea to felony theft and his 1978 Boulder County plea of *nolo contendere* to conspiracy to commit escape were constitutionally involuntary due to an inadequate advisement on the elements of the crimes to which he pled.[6] We find no merit in Blehm's argument.

Due process of law requires that a plea of guilty or *nolo contendere* be made knowingly and voluntarily. *Henderson v. Morgan*, 426 U.S. 637, 645, 96 S.Ct. 2253, 2257, 49 L.Ed.2d 108 (1976); *Lacy v. People*, 775 P.2d 1, 4 (Colo.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 350, 107 L.Ed.2d 337 (1989). A plea is not voluntary unless the record as a whole affirmatively demonstrates that the defendant understood the critical elements of the crime to which the plea is tendered. *People v. Drake*, 785 P.2d 1257, 1268 (Colo.1990); *see also People v. Wade*, 708 P.2d 1366, 1368–1369 (Colo.1985); *Lacy*, 775 P.2d at 4–7.

The crime of felony theft, as charged against Blehm in the 1975 Mesa County prosecution, required that the offender knowingly obtain or exercise control over anything of value of another without authorization and with the specific intent to permanently deprive the other person of the use or benefit of the thing of value. § 18-4-401(1)(a), 8 C.R.S. (1973). The record of the providency hearing shows the following colloquy occurred between the court and Blehm on the elements of felony theft:

Q [By the court] As to the charge of grand theft, there are four elements; first, that you acted knowingly—that means intentionally ...

A [By Blehm] Right.

Q ... that you acted to obtain a thing of value from another person; that you took the thing of value without that other person's authority; that you did so with the specific intent to deprive the owner of property permanently or something equivalent to that, such as abandoning the property so that the owner would permanently lose the use of it; and number four, that the value of the things taken was in excess of $100. Do you understand what the four elements are of grand theft?

A Yes, sir, I do.

Q The stipulation is that if those elements were presented to a jury that they would have enough evidence to come back with a verdict of guilty as to ... the grand theft. Do you understand that?

A Yes, I do.

Although the district court erroneously stated that the "knowingly" element of felony theft meant that Blehm must have acted "intentionally" for the purpose of obtaining a thing of value from another person, the court's misstatement inured to the defendant's benefit since "intentional-

---

5. Although Blehm's plea to the 1978 Boulder County charge of conspiracy to commit escape was *nolo contendere,* a judgment of conviction entered on a plea of *nolo contendere,* no less than a conviction based on a guilty plea, may be used to support an adjudication under the habitual criminal statute. *People v. Goodwin,* 197 Colo. 47, 593 P.2d 326 (1979).

6. Blehm does not challenge the adequacy of the court's advisement of the elements of the conspiracy to commit escape in connection with the 1976 Fremont County conviction, nor does he challenge the adequacy of the court's advisement on the elements of aggravated robbery during the 1978 Boulder County providency hearing.

ly" is a more serious form of mental culpability than "knowingly." *See* § 18–1–501, 8B C.R.S. (1986). The court's reference to "intentionally," therefore, must be viewed as harmless error.

The transcript of the 1978 Boulder County providency hearing concerning Blehm's plea of *nolo contendere* to conspiracy to commit escape shows that the court reviewed with Blehm the elements of that crime. In addition, the court expressly inquired of Blehm whether his attorney had explained to him each and every element of conspiracy to commit escape in a manner that permitted Blehm to "know what you're charged with and what you're pleading to?" Blehm responded to the court's questions by stating, "Yes, he has." The record also shows that Blehm acknowledged to the court that he understood that by pleading *nolo contendere* he was not contesting the charge to which the plea was entered and was waiving any and all defenses to the charge. While the court's advisement to Blehm of the nature of the crime of conspiracy to commit escape could have been more detailed, we are satisfied that the transcript of the providency hearing adequately demonstrates Blehm's understanding of the critical elements of the crime to which he pled.

We accordingly conclude that Blehm's 1975 guilty plea to felony theft and his 1978 *nolo contendere* plea to conspiracy to commit escape were voluntary and that the convictions entered thereon were constitutionally admissible as predicates for Blehm's adjudication of habitual criminality.

## IV.

■ We turn to the People's claim, raised in their cross-petition, that the court of appeals erred in relying solely upon Florida law for its holding that Blehm's two Florida convictions were constitutionally infirm and thus could not be used to support an adjudication of habitual criminality. We agree with the People's claim.

■ The court of appeals based its holding on Florida substantive law which provides that an accused adjudicated insane cannot be subsequently convicted of criminal offense unless he has been formally restored to sanity in a subsequent judicial proceeding.[7] Since Blehm was adjudicated insane in 1968 in a Colorado criminal proceeding and was later adjudicated insane in 1972 in a Florida prosecution, the court of appeals concluded that his 1970 Florida conviction for robbery and his 1979 Florida conviction for escape were constitutionally invalid as a matter of law on the basis of Florida law. In our view, the constitutional admissibility of prior convictions in an habitual criminal proceeding should not turn on whether the convictions meet the particular standards of state substantive law but, rather, on whether they satisfy the constitutional criteria for voluntariness.

■ A conviction based on a plea of guilty or *nolo contendere* may be constitutionally involuntary for one of two reasons: first, the plea may be involuntary because

7. The court of appeals cited *Jones v. State,* 421 So.2d 55 (Fla.App.1982) and *Horace v. Wainwright,* 781 F.2d 1558 (11th Cir.), *cert. denied,* 479 U.S. 869, 107 S.Ct. 235, 93 L.Ed.2d 160 (1986), for the proposition that Florida law precluded an accused previously adjudicated insane from entering a valid guilty plea in a subsequent felony prosecution prior to a formal restoration to sanity. In *Jones,* the Florida court of appeals held that the defendant, because he had been adjudicated incompetent to stand trial on charges of burglary and theft in 1979, was presumed incompetent, in the absence of a formal restoration to competency, to plead guilty to a 1980 charge of aggravated battery. In *Horace,* the Eleventh Circuit held that Horace, who was adjudicated incompetent in 1950 and escaped from the state hospital, was

presumed incompetent to plead guilty to a 1965 charge of robbery in the absence of any formal restoration to competence. The court was of the view that the trial court accepted the guilty plea without assuring itself that Horace knew of the possibility of the life sentence that he received and that the federal district court improperly applied a rule of procedural default in denying Horace's *habeas corpus* petition.

Although Florida law prohibits a defendant previously adjudicated insane from pleading guilty to a subsequent criminal charge prior to the defendant's formal restoration to sanity, this is not to say that any guilty plea prior to formal restoration to sanity would, on that account alone, constitute a *per se* violation of the Due Process Clause of the Fourteenth Amendment.

the defendant did not understand the nature of the constitutional protections waived by the plea; or, alternatively, the plea may be involuntary because the defendant did not have a complete understanding of the charge to which the plea was entered. *Lacy,* 775 P.2d at 4. Compliance with state law, however, is not necessarily equivalent to constitutional voluntariness. *Id.* at 4, n. 4. This is so because state law regarding pleas of guilty often contains requirements more stringent than the requisites mandated by the Due Process Clause of the Fourteenth Amendment. To be sure, state procedural rules serve the function of fostering compliance with constitutional standards of voluntariness, *see People v. Leonard,* 673 P.2d 37, 39–40 (Colo.1983), but compliance with such rules is not the *sine qua non* of constitutional voluntariness. Although a court's failure to comply with a state procedural rule might provide the defendant with a valid basis to set aside a plea in a post-conviction proceeding under state law, *People v. Muniz,* 667 P.2d 1377, 1381–82 (Colo.1983), that same noncompliance is not inexorably determinative of constitutional voluntariness. A plea of guilty or *nolo contendere,* therefore, may satisfy the standard of constitutional voluntariness so as to be admissible in an habitual criminal proceeding even though the plea might not have fully satisfied more stringent requirements of state law.

The court of appeals, in our view, erroneously resolved the constitutional validity of Blehm's Florida conviction solely on the basis of Florida law that precluded a defendant previously adjudicated insane from pleading guilty to a subsequently filed criminal charge unless the defendant has been formally restored to sanity. Notwithstanding this error, we find it unnecessary to address the constitutional validity of Blehm's Florida convictions. The reason we need not resolve the admissibility of the Florida convictions is that, even if we presume them to be constitutionally invalid, there were four valid Colorado felony convictions supportive of Blehm's adjudication as an habitual criminal under the habitual criminal statute. We limit ourselves in this opinion to disapproving the analysis employed by the court of appeals with respect to the constitutional admissibility of the Florida convictions.

The judgment of the court of appeals upholding the habitual criminal adjudication is accordingly affirmed.