23CA0559 Peo v Warro 07-03-2024 COLORADO COURT OF APPEALS Court of Appeals No. 23CA0559 Larimer County District Court Nos. 20CR1816, 21CR424 & 21CR77 Honorable Laurie K. Dean, Judge The People of the State of Colorado, Plaintiff-Appellee, v. Daniel Michael Warro, Defendant-Appellant. ORDER REVERSED AND CASE REMANDED WITH DIRECTIONS Division V Opinion by JUDGE LUM Harris and Brown, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced July 3, 2024 Philip J. Weiser, Attorney General, Megan C. Rasband, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee Esteban A. Martinez, Alternate Defense Counsel, Longmont, Colorado, for Defendant-Appellant 
1 ¶ 1 Defendant, Daniel Michael Warro, seeks to vacate three guilty pleas entered in the global disposition of Larimer County case numbers 20CR1816, 21CR77, 21CR424, and 21CR394. He appeals the district court order denying his Crim. P. 35(c) motion without appointing postconviction counsel or holding an evidentiary hearing. We reverse and remand for further proceedings. I. Background ¶ 2 The four cases in Warro’s global disposition were based on evidence that he (1) drugged two women without their consent and had sex with them; (2) held his wife at gunpoint, injured her eye, threw her phone down the stairs, and grabbed their infant while holding a gun; (3) resisted arrest and injured two police officers while reaching for a handgun; and (4) violated bail bond conditions and a protection order. The prosecution agreed to dismiss the fourth case, plus twelve felony and four misdemeanor counts from the first three cases, in exchange for Warro’s guilty pleas to (1) second degree assault, (2) felony menacing, and (3) second degree assault, respectively. ¶ 3 The district court accepted Warro’s pleas and ordered a presentence report (PSR) and sex-offense-specific evaluation 
2 (SOSE). Two months later, it sentenced Warro to an aggregate prison term of twelve years, plus a consecutive fifteen years of sex offender intensive supervision probation, in accordance with the plea agreements. ¶ 4 Warro timely filed a pro se Crim. P. 35(c) motion to vacate his three guilty pleas. He requested the appointment of counsel and claimed, among other things, that (1) his guilty plea was unconstitutional because he was not mentally competent to enter a plea agreement and (2) his counsel was ineffective for failing to raise the issue of his competence prior to his guilty plea. The district court denied the motion without appointing counsel and without a hearing. In its lengthy order, the court found that the record — specifically, Warro’s written yes/no answers on the guilty plea questionnaires, his statements during the providency hearing, and the PSR and SOSE — refuted his mental incapacity claim because it established that Warro was competent. As a result, it also concluded that Warro’s ineffective assistance claim failed because he could not establish that he was prejudiced by counsel’s failure to raise the issue of his competency. 
3 II. Discussion ¶ 5 Warro contends that he is entitled to the appointment of postconviction counsel and a hearing. Although at times framed through the lens of his ineffective assistance claim, Warro’s primary argument appears to be that the district court erred by concluding that the record clearly establishes his competency. We agree with Warro, conclude that he alleged sufficient facts to merit the appointment of counsel, and remand for further proceedings under Crim. P. 35(c). A. Standard of Review and Remedy ¶ 6 We review both the summary denial of a Crim. P. 35(c) motion and the constitutional validity of a guilty plea de novo. People v. Marquez, 2020 COA 170M, ¶ 17 (summary denial); Brooks v. People, 2019 CO 75M, ¶ 6 (constitutionality of plea). A court may deny a defendant’s Crim. P. 35(c) motion without an evidentiary hearing “only where the motion, files, and record in the case clearly establish that the allegations presented in the defendant’s motion are without merit and do not warrant postconviction relief.” Ardolino v. People, 69 P.3d 73, 77 (Colo. 2003). 
4 ¶ 7 If we conclude that a summary denial was in error, the remedy is to “put the train back on the tracks at the point it derailed.” People v. Chalchi-Sevilla, 2019 COA 75, ¶ 23. When the district court denies a defendant’s request for appointment of counsel and the pro se Crim. P. 35(c) motion presents at least one potentially meritorious claim, the proper procedure is to remand with directions to (1) appoint postconviction counsel, (2) allow counsel to supplement the petition, and (3) hold an evidentiary hearing on any potentially meritorious claims. Id. at ¶ 25. B. Applicable Law ¶ 8 A criminal defendant may not plead guilty “unless he does so ‘competently and intelligently.’” Godinez v. Moran, 509 U.S. 389, 396 (1993) (citations omitted). “The focus of a competency inquiry is the defendant’s mental capacity; the question is whether he has the ability to understand the proceedings.” Id. at 401 n.12. When there is some doubt about the defendant’s competency, the court should consider and resolve the issue based on factors including (1) defense counsel’s evaluation, (2) expert opinion, and (3) the defendant’s demeanor and interactions during court appearances. See Blehm v. People, 817 P.2d 988, 994 (Colo. 1991). 
5 ¶ 9 A defendant is incompetent to enter a guilty plea if, as a result of a mental or developmental disability, the defendant does not have (1) “sufficient present ability to consult with [his] lawyer with a reasonable degree of rational understanding in order to assist in the defense,” or (2) “a rational and factual understanding of the criminal proceedings.” § 16-8.5-101(12), C.R.S. 2023; see Godinez, 509 U.S. at 396. “‘Mental disability’ means a substantial disorder of thought, mood, perception, or cognitive ability that results in marked functional disability, significantly interfering with adaptive behavior.” § 16-8.5-101(15). ¶ 10 Although a defendant’s statements at a providency hearing “carry a strong presumption of verity,” courts cannot fairly exclude “all possibility that a defendant’s representations” were the product of factors — such as mental incapacity — that would render the guilty plea unconstitutional. Blackledge v. Allison, 431 U.S. 63, 74-
75 (1977); see Sanchez-Martinez v. People, 250 P.3d 1248, 1255, 1257-59 (Colo. 2011) (the defendant’s plea was unconstitutional despite his signature on “an advisal of rights form” and a Rule 11 colloquy at the providency hearing). To merit a postconviction 
6 hearing, Warro must merely assert facts that, if true, may warrant relief. See Chalchi-Sevilla, ¶ 7. C. Application 1. Allegations Made in the Motion ¶ 11 Warro’s motion alleged, in substantial detail, that he did not understand the plea proceedings due to mental health issues, new psychotropic medications, and traumatic brain injuries. In addition to alleging that Warro suffered from long-term mental health issues with depression and anxiety, the motion alleged that he suffered from three concussions beginning with his arrest on March 4, 2021 — injuries that caused multiple hospitalizations in addition to retrograde and anterograde amnesia. He also alleged that he was prescribed thirteen new medications in the months following his arrest and that he had adverse reactions to some of them. As a result, Warro alleged, he could not “remember anything, understand difficult information[,] or participate in legal proceedings” during the months following his injuries.
1 1 He also alleged that he relayed myriad symptoms to jail personnel, including, but not limited to, “amnesia, confusion, hallucinations, anxiety, concentration issues, disorientation . . . difficulty remembering new information . . . [and] personality changes.” 
7 ¶ 12 Warro also asserted that (1) he did not understand his attorney’s communications and had to call his mother after every visit; (2) he was assigned a peer counselor by the detention facility due to his “continuous lack of awareness”; and (3) his attorney asked him on “multiple occasions” if he believed he was competent, to which Warro responded that he “honestly did not know.” ¶ 13 Finally, Warro listed specific sources of evidence that would support his allegations, including (1) video evidence; (2) correspondence between health care professionals at the detention facility acknowledging his “cognitive issues, amnesia, hallucinations[,] and confusion”; and (3) written correspondence between his attorney and his mother. ¶ 14 Given the specificity of Warro’s allegations, the precise facts alleged, and the sources of evidentiary support Warro listed, we conclude that Warro has alleged sufficient facts that, if true, may warrant relief. Chalchi-Sevilla, ¶ 7. But this does not end our inquiry. We must also consider whether the record clearly refutes Warro’s claim, as the district court and the People contend. We conclude it does not. 
8 2. The Questionnaire and Providency Hearing ¶ 15 The district court concluded that Warro’s yes or no answers on the plea questionnaire and during the providency hearing establish his competency. We disagree. ¶ 16 We acknowledge that Warro’s yes or no answers could generally support a finding that he understood the proceedings, but we are not persuaded that simple yes or no answers, by themselves, are sufficient to refute Warro’s claim that he lacked the mental capacity to enter pleas. The cases the People cite do not stand for this proposition, and we are not aware of any that do. See, e.g., Sanchez-Martinez, 250 P.3d at 1257-59; see also Von Pickrell v. People, 163 Colo. 591, 598, 431 P.2d 1003, 1006-07 (1967) (“However regular the proceedings . . . might appear from the transcript, it still might be the case that petitioner did not make an intelligent and understanding waiver of his constitutional rights.” (quoting Sanders v. United States, 373 U.S. 1, 19-20 (1963))). ¶ 17 Our review of case law shows that a providency hearing could refute an incompetency claim if it included one or more of the following (1) defense counsel’s assessment that the defendant is competent, see Blehm, 817 P.2d at 994; (2) an expert’s 
9 contemporaneous competency evaluation, see id. at 995; People v. Pendleton, 2015 COA 154, ¶¶ 12-13; (3) an extensive inquiry into the defendant’s competency by the court, see Blehm, 817 P.2 at 994-95; and (4) clear competency findings, see id.; People v. Venzor, 121 P.3d 260, 262 (Colo. App. 2005) (concluding that the record refuted any concerns about the defendant’s mental capacity when the providency court found, with record support, that the defendant was “alert and intelligent,” had given the plea “quite a bit of thought,” had expressed himself regarding the elements of the agreement, and “knows what he is doing and he understands this decision”). But none of these were present here.
2 ¶ 18 Moreover, there were two relevant exchanges that went beyond yes or no responses from Warro, and they are conflicting as to Warro’s competency. First, the court asked whether Warro felt like his medications interfered with his ability to understand, or whether he felt clear headed. Warro answered, “I feel fine,” which does not directly answer whether Warro felt like his medications 2 Because the district court denied Warro’s motion for transcripts at state expense, we don’t have a record of every possible discussion of competency in this case. However, we have access to the transcripts relied on by the district court. 
10 affected his understanding or if he felt clear headed. The court followed with the compound question, “Do you understand what’s going on, and there’s no reason why I can’t take your plea today?” Warro answered, “No, Your Honor.” — which could mean that he didn’t understand what was going on, depending on which part of the question he was answering. ¶ 19 The second notable exchange concerned Warro’s guilty plea to felony menacing. It proceeded as follows: THE COURT: And, Mr. Warro, what did you do that makes you guilty of menacing? WARRO: To describe it or -- THE COURT: Did you menace someone? WARRO: Oh. Yes. THE COURT: And, who did you menace, and what with? WARRO: Ah. It was my then wife. THE COURT: Okay. And -- WARRO: And, why? THE COURT: And, did you have a weapon? WARRO: I don’t think so. 
11 In our view, this exchange suggests both that Warro had difficulty following the line of questions and that he did not remember the events underlying the menacing charge. Cf. Blehm, 817 P.2d at 994 (where the defendant “exhibited no confusion whatever to the court’s questions and responded clearly and precisely to each question”). Nonetheless, the court found that Warro’s plea was knowingly, voluntarily, and intelligently given. And it found the same for Warro’s two subsequent guilty pleas, without any further significant exchanges with Warro. The court made no findings with respect to whether Warro had the ability to understand the proceedings. ¶ 20 Thus, we read the exchanges at the providency hearing to provide only questionable evidence of competency, which is not sufficient to “clearly establish” that the allegations in Warro’s motion are without merit.
3 Cf. People v. McGlaughlin, 2018 COA 114, ¶ 31 (a district court “may make a dispositive factual finding 3 We do not go so far as to conclude that these exchanges gave the district court “reason to believe” Warro was incompetent, which would require suspension of the proceedings. § 16-8.5-102(2)(a), C.R.S. 2023; see Nagi v. People, 2017 CO 12, ¶ 11. We conclude only that these exchanges do not refute Warro’s claim of mental incapacity. 
12 without a hearing only when the fact in question is ‘clearly established,’” meaning that the record does not contain conflicting evidence). 3. Mental Health Evidence ¶ 21 As to the SOSE and PSR, the court noted that Warro had received a “robust evaluation” and acknowledged that he was receiving treatment for mental health issues, but it found “no indication . . . that any of [Warro’s] mental health concerns were so significant as to give rise to an implication that he could not understand the proceedings, participate in his defense, [or] consult with his attorney in a rational manner.” Warro argues that the court erred by relying on those documents because they were completed one and two months, respectively, after the providency hearing. We agree that the SOSE and PSR don’t clearly refute Warro’s incompetency claim. Not only were they created some time after the providency hearing, they also provide at least some evidence to support Warro’s contentions he did not have the mental capacity to enter guilty pleas. This evidence includes • the summary of psychological assessments from Warro’s SOSE, showing clinical range symptoms in many 
13 dimensions, “mental health issues that are impacting his daily functioning,” and the following opinion: “It is clear Mr. Warro is experiencing significant psychological difficulties, and he should be more intensively evaluated.”; • the SOSE showing that Warro self-reported active hallucinations, daily headaches, a history of head injuries, and unmanageable symptoms of anxiety and depression; • the PSR recommendation that “Mr. Warro should complete a psychological evaluation to ascertain the extent of his mental health issues”; • PSR input from the Larimer County Jail — “most notations involved [Warro’s] strange behavior (to include confusion, possible hallucinations, talking to himself) and suicidal statements”; and • a victim’s statement on the PSR that Warro’s “mental state and behaviors are not predictable or rational.” ¶ 22 Based on this evidence, we cannot conclude that the SOSE and PSR clearly refute Warro’s incompetency claim. Moreover, the 
14 evidence summarized in those documents is persuasive because it was obtained from multiple sources — it does not simply list Warro’s self-reported symptoms. ¶ 23 We do not consider whether the record establishes that Warro was competent at the sentencing hearing because competency at that time, two months after the providency hearing, does not establish that Warro was competent when he pleaded guilty. Cf. Pendleton, ¶¶ 12-13 (affirming a postconviction court’s finding — after an evidentiary hearing — that the defendant had been competent to enter a plea, in part because the evidence presented included three contemporaneous competency evaluations). ¶ 24 For all these reasons, we conclude that Warro’s competency claim has arguable merit. See Chalchi-Sevilla, ¶ 7. Accordingly, we remand for the appointment of postconviction counsel, for postconviction counsel to have the opportunity to supplement his petition, and for the postconviction court to then hold an evidentiary hearing on any potentially meritorious claims. Id. at ¶¶ 24-26; Ardolino, 69 P.3d at 77; see also Crim. P. 35(c)(3)(V). 
15 III. Disposition ¶ 25 The order is reversed and the case is remanded for further proceedings consistent with this opinion. JUDGE HARRIS and JUDGE BROWN concur.