**FILED**
**JANUARY 30, 2025**
**In the Office of the Clerk of Court**
**WA State Court of Appeals, Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No.  39857-9-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | PUBLISHED OPINION |
| EARL PHILLIPS, III, | ) | |
| | ) | |
| Appellant. | ) | |

FEARING, J. — Appellant Earl Phillips resided in a county jail for 164 days between the time of his arrest for burglary and assault and the superior court's entry of a finding of not guilty by reason of insanity.  For thirteen of those days, a court order detained Phillips for a competency evaluation pursuant to RCW 10.77.  This appeal raises

the unique question about the number of days for which Phillips should receive credit, under RCW 10.77.025, toward the maximum time allowed for his detainment for treatment. Phillips argues he should receive credit for all 164 days in jail. The State contends Phillips should receive credit only for the thirteen days of detainment specifically for the competency evaluation. The superior court agreed with the State. We do too.

FACTS

Appellant Earl Phillips, III, has suffered from mental illness, including hearing voices, since six years of age. As of March 11, 2017, Phillips had failed to take his medications for years.

On March 11, 2017, Earl Phillips entered an empty Walla Walla home undergoing a remodel. Phillips then believed the government owned the house and "mobile command" had told him that he was in the United States military. Phillips bore on his person two large knives, respectively ten and eighteen inches in length.

Law enforcement journeyed to the residence as a result of reports of an individual trespassing into the house. As the officers entered the home, Earl Phillips stood at the top of a steep staircase leading from the first floor to the second floor.

Earl Phillips yelled to the officers that they were trespassing on his command nest. Phillips raved about being in charge of the universe as he urinated over the stairs in the direction of the officers. Phillips expressed an interest in killing the officers. The

2

officers sought to reason with Phillips but received incomprehensible replies. Phillips refused to discard his knives.

The police officers arrested Earl Phillips and transported him to Saint Mary's Medical Center. In response to questions, at the hospital, about his family, Phillips answered: " 'I ate my family. I have no son.' " Clerk's Papers (CP) at 21. Saint Mary's lacked a bed for Phillips, so officers transferred him to the Walla Walla County jail. Phillips remained in the jail for 164 days or until August 14, 2017.

When speaking in March 2017, with Dr. Philip G. Barnard, a clinical psychologist, Earl Phillips reported that "everything seemed like a dream at the time." CP at 4. Phillips denied resisting the officers. Phillips did not recall having a weapon and claimed he only sought to protect himself and his property.

The State of Washington charged Earl Phillips with one count of second degree assault, one count of second degree burglary, and one count of obstructing a law enforcement officer. On May 3, 2017, the superior court ordered a competency evaluation of Phillips. The evaluator filed a report with the court on May 16.

On August 9, 2017, Earl Phillips moved for judgment of acquittal by reason of insanity. On August 14, 2017, the trial court found Phillips not guilty of all three crimes by reason of insanity and ordered his commitment to the State Department of Social and Health Services (DSHS) for treatment. DSHS admitted Phillips to Eastern State Hospital on August 22.

On May 17, 2021, the trial court ordered that Earl Phillips be partially and conditionally released from Eastern State Hospital, but only to the extent of hospital staff-escorted community outings and unescorted ground privileges. On June 13, 2022, Phillips petitioned the court for full conditional release. On December 14, 2022, the trial court granted the petition, in part.

On March 10, 2023, DSHS sent its semi-annual progress report about Earl Phillips' treatment to the Walla Walla County Superior Court. As will be discussed later, the State may hold an individual found not guilty by reason of insanity (NGRI) a maximum length of time commensurate with the maximum sentence attended to the charged crime. Because the court could impose a maximum sentence of ten years on Phillips for his alleged crimes, DSHS, in its March 10 report, informed the superior court that he had a maximum commitment date of ten years, or until August 14, 2027. DSHS gained custody of Phillips on August 14, 2017. The August 14, 2027 date did not give Phillips any credit for time he spent in the Walla Walla County jail before the court's entry of the NGRI verdict. Phillips disagreed with DSHS' calculation of the maximum commitment time. He contended his maximum commitment date should be March 11, 2027, ten years from his jailing.

PROCEDURE

Earl Phillips moved the superior court for an order to credit him time toward his maximum commitment date. Phillips requested that he be credited for the entire 164

days he spent in the county jail before entering his NGRI plea and before his custody transfer to DSHS. DSHS resisted the motion.

By the time of the superior court hearing on Earl Phillips' motion, DSHS conceded that Phillips should be credited with thirteen days from the time he spent in the Walla Walla County jail. Those thirteen days represented the length of time between May 3, 2017, when the superior court ordered a competency evaluation of Phillips, and May 16, when the evaluator filed a report to the court. At the end of the motion hearing, the superior court accepted DSHS' position and granted Phillips a thirteen-day credit, not a 164-day credit. The court established the new maximum date of commitment to be August 1, 2027.

## LAW AND ANALYSIS

Earl Phillips challenges the superior court's decision on appeal. He repeats his request for a 164-day credit. He contends the governing statute, RCW 10.77.025(1), affords him a credit for the entire time spent in the Walla Walla County jail awaiting disposition of his prosecution. In addition to relying on language in RCW 10.77.025(1) and a related statute, Phillips forwards the policy disfavoring indeterminate stays in mental health treatment facilities. According to Phillips, a contrary reading of the statute also disincentives the State from timely agreeing to entry of an insanity plea.

Insanity acquittees constitute a special class treated differently from other candidates for commitment. *Jones v. United States*, 463 U.S. 354, 370, 103 S. Ct. 3043,

77 L. Ed. 2d 694 (1983). When a criminal defendant establishes by a preponderance of the evidence that he is not guilty of a crime by reason of insanity, the United States Constitution permits the State to confine him to a mental health institution until such time as he regains his sanity or no longer endangers himself or society. *Jones v. United States*, 463 U.S. 354, 370 (1983).

The order of commitment following a NGRI plea generally imposes an indefinite length of commitment because neither the judge nor the State can predict the timespan needed for recovery. RCW 10.77.200. Still, a Washington statute, RCW 10.77.025, restricts commitment to the maximum sentence for the crime charged. The statute recognizes that confinement in a mental health facility entails a massive curtailment of liberty. *In re Personal Restraint of Knapp*, 102 Wn.2d 466, 475, 687 P.2d 1145 (1984). The acquittee may earlier petition for good cause for an earlier release. RCW 10.77.200(5).

This appeal requires an exegesis of RCW 10.77.025(1) and its companion definitional statute, RCW 10.77.010(4). The former statute declares:

> Whenever any person has been: (a) Committed to a correctional facility or inpatient treatment under any provision of this chapter; or (b) ordered to undergo alternative treatment following his or her acquittal by reason of insanity of a crime charged, such commitment or treatment cannot exceed the maximum possible penal sentence for any offense charged for which the person was committed, or was acquitted by reason of insanity.

RCW 10.77.010(4) defines "commitment," for purposes of RCW 10.77.025(1) as:

> the determination by a court that a person should be detained for a period of either evaluation or treatment, or both, in an inpatient or a less-restrictive setting.

Earl Phillips contends RCW 10.77.025(1) and RCW 10.77.010(4) are ambiguous. This contention focuses on the term "commitment" as defined in the latter statute. He requests that this court appraise the legislative purpose behind the statutes, consider the constitutional prohibition on indeterminate sentences for the criminally insane, and apply the rule of lenity in order to credit him for the 151 days spent in the custody of Walla Walla County jail before the finding of NGRI toward his maximum commitment date in addition to the thirteen days spent detained for the competency evaluation. We discern no ambiguity. We conclude, as did the superior court, that Phillips may only receive credit for thirteen days.

This court lacks a copy of the May 3, 2017 superior court order for a competency evaluation of Earl Phillips and the May 16, 2017 evaluator's report. We do not know whether Phillips remained in the Walla Walla County jail from May 3 until the evaluator completed the assessment or if the jail transported him to another location for purposes of the evaluation. Regardless, both parties agree that the order for the competency ran from May 3 until the filing of the evaluator's report on May 16.

Earl Phillips argues RCW 10.77.025 and RCW 10.77.010, specifically the term "commitment" as used and defined in the statutes, are ambiguous as they do not render

clear whether time served in jail before a defendant is found not guilty by reason of insanity should be credited toward the acquitted defendant's maximum commitment date. He argues that, because the statutes are ambiguous, this court must look to the rule of lenity and the constitutional prohibition on indeterminate sentences for the criminally insane to interpret the statutes.

We apply fundamental and familiar rules of statutory interpretation. In construing statutes, we ascertain and effectuate the legislature's intent. *State v. Keller*, 2 Wn.3d 887, 910, 545 P.3d 790 (2024). If the statute's meaning is plain on its face, we must give effect to that plain meaning as an expression of legislative intent. *Department of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 910, 43 P.3d 4 (2002). We glean the plain meaning of a statute by considering the text of the provision in question, the context of the statute in which the provision is found, related provisions, amendments to the provision, and the statutory scheme as a whole. *Association of Washington Spirits & Wine Distributors v. Washington State Liquor Control Board*, 182 Wn.2d 342, 350, 340 P.3d 849 (2015). If a statute is open to more than one interpretation, we may resort to statutory construction, legislative history, and relevant case law for assistance in discerning legislative intent. *State v. Keller*, 2 Wn.3d 887, 910 (2024).

Earl Phillips highlights that RCW 10.77.025 and RCW 10.77.010 do not explicitly deny an accused credit for the time spent in court-ordered treatment or evaluation. Phillips asserts that the time spent in court-ordered competency evaluation proceedings

includes any time in pretrial custody that informs the court whether a person should be detained for evaluation and treatment pursuant to an insanity plea. Relatedly, according to Phillips, time spent by the court and the State's and defense counsel evaluating the prosecution between the jailing and before trial should also be considered commitment for purposes of RCW 10.77.025(1) and RCW 10.77.010(4). In essence, according to Phillips, any time spent detained, regardless of whether the location is the county jail, a state prison, or a state mental hospital, must be credited against the maximum time the State may hold him for commitment or treatment as a result of the finding of insanity. In response, the State argues that the statutes at issue, without equivocation, only allow a credit for time detained by court order for evaluation or treatment.

To repeat, RCW 10.77.010(4) defines "commitment" as "the determination by a court that a person should be detained for a period of either evaluation or treatment, or both, in an inpatient or a less-restrictive setting." RCW 10.77.010(4). This definition limits the time of commitment to the time detained by a court order for treatment or evaluation. No court order detained Earl Phillips for evaluation or treatment between his arrest and the superior court's finding of insanity other than the order that detained Phillips for thirteen days for the competency evaluation. During the remaining 151 days, counsel for the State and the defense may have ruminated and discussed the case and the ramifications of the competency evaluation report. The court may have even reviewed

9

the superior court file, including the report. But no court order directed the court, defense counsel, or the State's attorney to perform these tasks.

Earl Phillips argues that the ambiguities in RCW 10.77.025 and RCW 10.77.010(4) in light of this appeal's facts encourage, if not compel, employment of the rule of lenity. Because we perceive no ambiguity in the language that answers the question on review, we decline to apply the rule. The rule of lenity applies only if the plain language of the statute is ambiguous and traditional statutory interpretation rules do not help clarify the ambiguity. *State v. McDaniel*, 185 Wn. App. 932, 936, 344 P.3d 1241 (2015).

Earl Phillips argues that denying credit for pretrial incarceration when an individual subsequently enters an insanity plea conflicts with the legislature's recognition of the constitutional prohibition on indeterminate commitment and disincentivizes the State to timely consent to an insanity plea for a mentally ill individual. We recognize these potential harms, but must be guided by the statutes' language.

We mention some cases cited by Earl Phillips in support of his appeal. These cases favor the acquitee, but entail different circumstances, if not a different statute.

In *Jong Choon Lee v. Hamilton*, 56 Wn. App. 880, 785 P.2d 1156 (1990), this court interpreted language then found in RCW 10.77.020(3) similar to today's RCW 10.77.025. The court determined that the language demands credit for time for hospitalization incurred before acquittal. The court reasoned, in *Jong Choon Lee*, that,

because RCW 10.77.020(3) refers to commitment "under any provision of this chapter," it embraces pre-acquittal commitment. *Jong Choon Lee v. Hamilton*, 56 Wn. App. 880, 884 (1990). The legislature has not extended this credit to time spent in jail not related to a competency evaluation.

In *State v. Lewis*, 184 Wn.2d 201, 205, 355 P.3d 1148 (2015), the Washington State Supreme Court concluded that a defendant was entitled to credit for the 387 days he served awaiting trial on multiple charges, but not constitutionally entitled to credit for time served on his burglary and assault sentences after he began serving his sentence for failure to register as a sex offender.

We recognize, as acknowledged by *State v. Lewis*, that, because a defendant entering a guilty plea must be credited with pretrial incarceration time toward the imposed sentence, an acquittee might reasonably expect to also receive credit for time spent in pretrial detention toward the maximum time spent in a mental health facility. The legislature might someday agree with this expectation. In the meantime, the legislature may distinguish between a criminal sentence after conviction and a commitment to a mental health hospital for treatment after an NGRI because the legislature wishes to insure sufficient treatment before release to the community. The acquittee also retains the right to petition early for release.

No. 39857-9-III
*State v. Phillips*

CONCLUSION

We affirm the superior court's credit to Earl Phillips of only the thirteen days he

spent under the order for an RCW 10.77 competency evaluation.

_____
Fearing, J.

WE CONCUR:

_____          _____
Cooney, J.                                Korsmo, J.P.T. [1]

---

[1] Kevin M. Korsmo, a retired judge of the Washington State Court of Appeals, is serving as a judge pro tempore of this court pursuant to RCW 2.06.150(1).

12